**UNITED STATES of America,**
**Appellant,**

v.

**Thomas C. REED, Defendant-Appellee.**

**No. 1150, Docket 85–1031.**

United States Court of Appeals,
Second Circuit.

Argued May 7, 1985.
Decided Sept. 30, 1985.

Paul Shechtman, Asst. U.S. Atty., S.D. N.Y., New York City (Benito Romano, Asst. U.S. Atty., Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City, of counsel), for appellant.

Edward M. Shaw, New York City (Michael J. Plishner, Daniel E. Casagrande, Stillman, Friedman & Shaw, P.C., New York City, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., of counsel), for defendant-appellee.

Before MESKILL, KEARSE and WINTER, Circuit Judges.

WINTER, Circuit Judge:

The United States appeals from an order dismissing for improper venue counts three and four of an indictment against Thomas Reed charging perjury and obstruction of justice in violation of 18 U.S.C. §§ 1623, 1503 (1982). For reasons stated below, we reverse the dismissal of these counts and order their reinstatement in the Southern District of New York.[1]

BACKGROUND

This criminal prosecution arises out of deposition testimony given by Reed in a civil action which was brought in March, 1981 in the Southern District of New York by sellers of Amax Inc. options. *O'Connor & Associates v. Dean Witter Reynolds, Inc.*, No. 81 Civ. 1354 (S.D.N.Y. filed March 10, 1981). Reed is among the eighteen named defendants. The complaint alleged that Reed had engaged in illegal insider purchases of Amax call options and thus had defrauded those who sold these options to him. The inside information allegedly concerned a confidential merger proposal in which Standard Oil Company of California offered to purchase the outstanding shares of Amax stock for more than twice the market price. The complaint alleged that Reed learned about the merger negotiations from his father, a member of the Amax board. He and the other defendants are then alleged to have exploited this information to make an enormous profit on the purchase and sale of call options during the forty-eight hour period surrounding the takeover proposal.

Reed's deposition in the civil action was taken in San Francisco, apparently for his convenience. At the beginning of the depo-

---

1. Because the decision arguably departs from this circuit's prior decision in *United States ex rel. Starr v. Mulligan*, 59 F.2d 200 (2d Cir.1932), and explicitly overrules *United States v. Broth-* *man*, 191 F.2d 70 (2d Cir.1951), this opinion has been circulated among the active members of the court. No active judge sought *en banc* consideration of the case.

sition, counsel for the O'Connor plaintiffs stated that the deposition was "taken pursuant to notice and ... the applicable rules ... of the United States District Court for the Southern District of New York." Reed's counsel at this time also stated that "[w]e have agreed that the deposition will be taken and all exhibits to it will be held pursuant to the terms of the protective order previously entered by Judge Lasker in the [O'Connor] action." The transcript of Reed's deposition testimony was subsequently filed in the Southern District of New York.

In August, 1984, a four count indictment was returned against Reed in the Southern District. Counts one and two of the indictment charge that Reed committed securities and wire fraud by purchasing the Amax options on the basis of inside information received from his father. Counts three and four charge Reed with perjury, 18 U.S.C. § 1623, and obstruction of justice, 18 U.S.C. § 1503, arising out of the deposition testimony taken in the O'Connor civil action. Count three alleges that Reed perjured himself in the San Francisco deposition when he testified: (i) that he had discussed purchasing Amax options with a friend at a social gathering on March 1, 1981, the day before he is alleged to have spoken with his father; (ii) that he did not speak to his father on March 2, 1981; and (iii) that prior to his trading in the options, he was unaware of a special meeting of the Amax Board convened to consider the merger proposal. Count four charged obstruction of justice, alleging that handwritten, purportedly contemporaneous-with-the-trading notes that Reed presented and relied upon during the deposition were fraudulent *post hoc* creations designed to disguise his illegal trading. These notes were written in Virginia and California.

Reed moved to dismiss all four counts of his indictment. He argued that the first two counts failed to state crimes since

Reed did not owe a duty of disclosure to the option sellers and did not have a fiduciary relationship with Amax Corporation. He further claimed that counts three and four should be dismissed for lack of venue.

Judge Ward, in an extensive opinion, 601 F.Supp. 685 (S.D.N.Y.1985), denied the motion to dismiss counts one and two. However, he dismissed the perjury count on the ground that venue for perjury lies only in the district in which the oath was taken. He dismissed the obstruction of justice count on the ground that venue lies only in the district in which the acts constituting the obstruction occurred.

The district judge believed that his rulings were compelled by two prior decisions of this court, *United States ex rel. Starr v. Mulligan*, 59 F.2d 200 (2d Cir.1932), and *United States v. Brothman*, 191 F.2d 70 (2d Cir.1951). In addition, he examined the language and legislative history of the two statutes, the conflicting authorities of several decisions in other circuits, and the policies underlying a criminal defendant's constitutional right to venue in the place where the crime was committed. He concluded from that examination that venue in the Southern District was improper "even in the absence of binding second circuit authority."

The government appeals from the dismissal of counts three and four for improper venue, and trial of the remaining charges has been stayed pending disposition of this appeal. We reverse.

DISCUSSION

A general discussion of underlying constitutional policies is in order before examining the law of venue as it relates to the individual counts. Fed.R.Crim.P. 18 [2] provides that venue in federal criminal prosecutions lies in the district in which the alleged crime was committed. This rule

---

**2.** Fed.R.Crim.P. 18:

*Place of Prosecution and Trial*

Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed.

The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.

was derived from the constitutional venue provisions. *See* U.S. Const. art. III, § 2, cl. 3; U.S. Const. amend. VI ("the State and district wherein the crime shall have been committed"). While these statements clearly establish certain rights, they are often of precious little aid in explaining how the locus of a crime is to be determined. Consequently, Congress usually appends a venue provision to criminal statutes, which provides a method of fixing the place or places of prosecution. *See* Abrams, *Conspiracy and Multi-Venue in Federal Criminal Prosecutions: The Crime Committed Formula,* 9 UCLA L.Rev. 751, 816 (1962). However, since neither the perjury nor obstruction of justice statute contains such a provision, a court entertaining a challenge to venue must determine "the locality of the offense." *Armour Packing Co. v. United States,* 209 U.S. 56, 76, 28 S.Ct. 428, 433, 52 L.Ed. 681 (1908).

We note at the outset an analytical flaw that has plagued analysis in this area. Both courts and commentators have tended to construe the constitutional venue requirement as fixing a single proper situs for trial. It is clear, however, where the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue. The constitution requires only that the venue chosen be determined from the nature of the crime charged as well as from the location of the act or acts constituting it, and that it not be contrary to an explicit policy underlying venue law.[3] .

While it has been stated that questions of venue in criminal cases "raise deep issues of public policy in the light of which legislation must be construed," *United States v. Johnson,* 323 U.S. 273, 276, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944), the precise policies to be furthered by venue law are not clearly defined. Although the concept of a right to trial in the vicinage was so highly regarded as to appear twice in the Constitution, the Supreme Court has yet to articulate a coherent definition of the underlying policies. In *United States v. Cores,* 356 U.S. 405, 407, 410, 78 S.Ct. 875, 877, 879, 2 L.Ed.2d 873 (1958), it stated that the venue provisions were intended to protect defendants against the unfairness and hardship of prosecution in places remote from their homes. But in *Johnston v. United States,* 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956), the policy was said to fix the site of the trial not at the defendant's home but in the vicinage of the crime. *Id.* at 220–21, 76 S.Ct. at 742–43. This lack of definition was noted by Justice Harlan in his dissent in *Travis v. United States,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961). He argued there that the "basic policy of the Sixth Amendment" would be best served by holding trial where the "witnesses and relevant circumstances surrounding the contested issues" could be gathered. He further noted that where competing jurisdictions have those attributes, venue in either does not offend the Constitution. *Travis,* 364 U.S. at 640, 641, 81 S.Ct. at 363, 364. *See also* Note, *Criminal Venue in the Federal Courts: The Obstruction of Justice Puzzle,* 82 Mich.L.Rev. 90, 105 (1983) (concluding that purpose of venue limitations is to promote thorough factfinding and that constitutional venue limitations should be applied flexibly to that end).

We believe it clear that fairness to defendants cannot be the sole grounds for determining venue because the most convenient venue for them may often have little, if any, connection with the crimes charged. For example, all appear to agree that the place where the acts constituting the crime

---

**3.** Indeed, the old English common law rules of venue produced a doctrine that a crime could be prosecuted only in a venue in which all of the acts necessary to establish the offense had occurred. *See* Note, *Criminal Venue in the Federal Courts: The Obstruction of Justice Puzzle,* 82 Mich.L.Rev. 90, 105 & n. 78 (1983). This search for the one perfect locus was chimeric and forced Parliament to define permissible venue or venues explicitly. The great criminal law scholar Stephen astutely noted that "[t]he only general interest attaching to these exceptions is that they prove that the general principle which requires so many exceptions must be wrong." 1 J. Stephen, *A History of the Criminal Law of England* 277 (1883).

occurred is a proper venue. It is hardly uncommon, however, for a defendant to have only limited contact with that place. A foreign courier attempting to import illegal drugs through Kennedy Airport will not find the Eastern District of New York particularly convenient nor would a co-conspirator in Miami who never set foot in New York.

As the foregoing suggests, a review of relevant authorities demonstrates that there is no single defined policy or mechanical test to determine constitutional venue. Rather, the test is best described as a substantial contacts rule that takes into account a number of factors—the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding—which we discuss seriatim.

Virtually all the caselaw designates the site of the defendant's acts as a proper venue. This is because the alleged criminal acts provide substantial contact with the district. In addition, this site may seem fair to defendants at least in the perverse sense of having been freely chosen by them as the place at which the acts were committed. Finally, the place where the criminal acts occurred is usually as suitable for factfinding as any other.

The other factors are also important, however, and often give sites other than where the acts occurred equal standing so far as venue is concerned. Consider the second factor, the elements or nature of the crime. Particularly where federal crimes are concerned, the very definition of the crime may implicate more than one district, as where interstate transportation is a jurisdictional prerequisite. In the present case, the perjury outlawed by § 1623 must be in an ongoing federal judicial proceeding, or ancillary thereto, which may be pending in a district other than where the oath is taken.

For another example, conduct which violates a federal court order may occur outside the district in which the order was issued. The federal courts, however, have never required that criminal contempt proceedings be brought only where the acts occurred, even when the contumacious conduct is committed by one who is not a party to the underlying action, *Waffenschmidt v. McKay,* 763 F.2d 711, 714 (5th Cir.1985). The contumacious conduct may be punished in the district where the order was issued whether or not the acts occurred elsewhere, the effects of the acts fell elsewhere or the evidence thereof is located elsewhere. The reason for this rule has been thusly stated:

> If the place of the trial for a criminal contempt must be in the district where the acts constituting it were committed, then where such acts were committed in a different district than that of the court whose order had been contemned, such court would be powerless to deal punitively with the violation of its injunctive orders, and the trial and punishment of such contempt would have to be by a different court from that whose order had been defied. This would clearly be an alteration of the entire idea of a contempt, and in derogation of the power of a court to deal with violators of its orders. The essential act of contempt is the disrespect shown to the order of the court and the disobedience thereof.

*Dunham v. United States ex rel. Kansas City Southern Railway,* 289 Fed. 376, 378 (5th Cir.1923).

The interests furthered by this rule clearly transcend factfinding and fairness to the defendant. Where essential elements of a crime are related to the integrity of the proceedings of judicial tribunals in districts other than where the acts took place, for example, those tribunals should not be left to the generosity of prosecutors or judges in other districts to defend their powers. Such officials may have little familiarity with the underlying case. They also may have little reason other than considerations of comity to enforce orders from other districts and limited resources to do so. The district in which the court order was issued is thus said to have sufficient con-

tact with the criminal contempt to be the site of prosecution.

Third, places that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring. To some extent this factor overlaps with the definition and nature of the crime, and the criminal contempt cases are of relevance here also. Established caselaw thus allows prosecutions under many federal statutes to be brought in any district where the effects of the crime are felt. Hobbs Act and Taft-Hartley criminal prosecutions may be brought in districts where interstate commerce is affected as well as where the acts took place. *United States v. Craig*, 573 F.2d 513, 517 (7th Cir.), *cert. denied*, 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 111 (1978); *United States v. Billups*, 692 F.2d 320, 331–33 (4th Cir.1982), *cert. denied*, — U.S. —, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983). Other examples include venue in bail jumping cases, *see* Annot., 52 A.L.R.Fed. 901 (1981); *United States v. Martin*, 704 F.2d 515, 516–18 (11th Cir. 1983), and in cases involving the inducement of the unlawful entry of immigrants, *United States v. Castillo-Felix*, 539 F.2d 9, 13 (9th Cir.1976).

Finally, the suitability of the district for accurate factfinding must be considered. Determining the proper venue under particular statutes is done, not by examining the evidence in each individual case, but by scrutinizing the definition of the crime and the likely location of evidence of such crimes generally. Changes of venue because of factors peculiar to a particular case may occur pursuant to a motion under Rule 21, Fed.R.Crim.P.

We now proceed to an examination of the individual counts. Because the crimes charged are conceptually similar, much of the discussion of the perjury count applies to the obstruction of justice charges as well. A separate discussion of each count is necessary, however, because of differing legislative histories and prior caselaw.

### (1) *The Perjury Count*

Reed is charged with perjury under 18 U.S.C. § 1623, a provision enacted as part of the Organized Crime Control Act of 1970. It prohibits false statements "in any proceeding before or ancillary to any court or grand jury of the United States." *Id.* § 1623(a). Congress did not, however, explicitly address venue in this revised perjury statute.

■ Reed argues that Congressional silence on the issue is a clear indication of its desire to incorporate the established rule for venue in perjury cases developed under the general perjury statute, 18 U.S.C. § 1001. Citing our decision in *United States ex rel. Starr v. Mulligan*, 59 F.2d 200, 202 (2d Cir.1932), which involved § 1001's predecessor, Reed argues that the crime of perjury is committed in the district where the false statement under oath is uttered, and that venue is proper only in that district. In *Starr*, the defendant was charged in a District of Columbia indictment with signing and attesting to a false statement on an application executed in New York but filed with the Civil Service Commission in Washington, D.C. The defendant was arrested in New York, and the government sought his removal to the District of Columbia. We rejected the government's argument that Starr had committed perjury when he filed the false statements with the Civil Service Commission. We thus declined to order Starr's removal on the grounds that the crime was committed in New York rather than in the District of Columbia.

It is well settled that the crime of perjury is complete the moment the oath is taken. *Steinberg v. United States*, 14 F. (2d) 564 (C.C.A.2); *United States v. Noveck*, 273 U.S. 202, 47 S.Ct. 341, 71 L.Ed. 610; *Levin v. United States*, 5 F. (2d) 598 (C.C.A.9); *Commonwealth v. Carel*, 105 Mass. 582, 586; *The Queen v. Vreones*, [1891] 1 Q.B. 360. It is true that the authorities cited did not involve the issue of venue as does the case at bar. But the reasoning upon which they rest is clearly inconsistent with the view

that a second crime of perjury was committed upon the publication of the false application.

*Starr*, 59 F.2d 200, 202 (2d Cir.1932).

We are not persuaded that *Starr* is factually and legally indistinguishable. *Starr* did not involve perjury in a proceeding ancillary to an ongoing proceeding in another district. Therefore, it did not address the issue here—whether perjury committed in an ancillary proceeding may be prosecuted in the district in which the parent proceeding is pending, as well as in the district in which the oath was taken.[4] We need not, therefore, assess *Starr*'s continuing vitality as a precedent.

To the extent that Congress' intention can be divined, we believe that in the case of a false statement made under oath in one district but ancillary to a proceeding pending in another district, it intended venue in either district to be proper. When Congress enacted § 1623 in 1970, it was particularly concerned with deterring perjurious testimony in pending proceedings. Section 1623 was "enacted to facilitate perjury prosecutions and thereby enhance the reliability of testimony before federal courts and grand juries." *See* S.Rep. No. 617, 91st Cong., 1st Sess. 59 (1969) ("Title IV constitutes the best efforts of the Committee to fashion a new false declaration provision which will offer greater assurance that testimony obtained in grand jury and court proceedings will aid the cause of truth.") The original draft reached perjury only when committed in a trial or hearing

before a court or grand jury, but the bill was modified to reach perjurious statements in ancillary proceedings such as depositions. *Dunn v. United States*, 442 U.S. 100, 108–10, 99 S.Ct. 2190, 2195–96, 60 L.Ed.2d 743 (1979). *See United States v. Scott*, 682 F.2d 695, 698 (8th Cir.1982) (equating deposition and ancillary proceedings). This concern over the effect of perjury in proceedings ancillary to pending parent proceedings, we believe, supports our view that venue is proper in either location. Certainly, nothing in the legislative history indicates that Congress intended to limit venue under § 1623 to the place where the oath was taken.

In any event, we believe that an independent appraisal of the relevant factors—the site of the criminal acts, the elements and nature of the crime, the locus of its effects, and the suitability of the various districts for accurate factfinding—leads to the conclusion that perjury in one district in a proceeding ancillary to a proceeding in another district may be prosecuted in either.

The criminal acts alleged here were committed in California. The other factors clearly indicate, however, that venue was proper in the Southern District as well. So far as the nature of the crime was concerned, Reed's testimony was inextricably bound to the Southern District of New York. As he was informed at the start of the deposition, Reed was giving testimony pursuant to the Southern District's local rules and shielded by a protective order secured in that district. Because Reed's

---

**4.** The oft-repeated statement in *Starr* that perjury is complete when the oath is taken merely provides a temporal terminus for the crime and offers no reason why venue may not lie in the district of the parent proceeding. *United States v. Candella*, 487 F.2d 1223, 1227–28 (2d Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974), is suggestive but not dispositive on that issue. In that case, the defendants executed false affidavits in Brooklyn and gave them to New York City officials in that borough, which is in the Eastern District of New York. The City officials then conveyed the documents to Manhattan, which is in the Southern District. We held that the false affidavits, which violated the general perjury statute, 18 U.S.C. § 1001, fell within the continuing offense

venue statute, 18 U.S.C. § 3237(a), which permits venue in any district in which an offense was "begun, continued or completed." Stating that the "force propelled here ... immediately contemplated Manhattan," we held that false statements made in the Eastern District, which were intended to produce funds in Manhattan, could be prosecuted in the Southern District. The relationship between Reed's perjury and the outcome of the litigation in the Southern District seems analogous to the conduct and effect reasoning of *Candella*. *Starr*'s holding that the act of perjury is complete the moment the oath is taken, however, may prevent us from utilizing the continuing criminal offense venue statute, 18 U.S.C. § 3237(a), to determine venue, and *Candella* may thus be distinguishable.

testimony was ancillary to the Southern District civil action, that action is the sole source of federal jurisdiction. If Reed's sworn statements were not ancillary to that action, he could have been prosecuted only in a state court.

For similar reasons, the locus of the intended effects of the alleged criminal conduct was in the Southern District of New York because the alleged perjury was intended to affect the outcome of an action pending there.

For purposes of venue, we believe that perjurious testimony is fully analogous to contumacious conduct. A party who violates a court order is subject to the issuing court's contempt sanctions no matter where the actions constituting the contempt take place. Power to punish perjury is as necessary to ensure the integrity of a court's proceedings as is power to punish contempt. As in the case of criminal contempt, a court unable to punish false testimony affecting its proceedings would be at the mercy of the limited resources and prosecutorial priorities of a foreign district, and the risk would be great that perjurious conduct would go unpunished.

Finally, we note that the witnesses necessary to prove or disprove the falsity of Reed's statements are at least as likely to be in the Southern District as in California. Given the requirement of an ongoing proceeding to a § 1623 violation, *see Dunn*, 442 U.S. at 108–10, 99 S.Ct. at 2195–96 (§ 1623 intended to sweep less broadly than general perjury statute and reach only inconsistent statements uttered in or ancillary to a proceeding), one can generalize that in a § 1623 perjury case the witnesses are as or more likely to be found in the district in which the underlying proceeding has been brought as in the district in which the false testimony was uttered.

The relevant factors, therefore, lead us to conclude that venue for the perjury count properly lay in the Southern District of New York.

(2) *The Obstruction of Justice Count*

Reed is charged under 18 U.S.C. § 1503, which provides:

> Whoever ... corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

The acts alleged to constitute the obstruction are the creation of notes in Virginia and California and the use of those notes in the California deposition.

The circuits are split on the issue of proper venue for obstruction of justice in cases where the acts occur in a district other than that in which the proceeding sought to be obstructed is pending. The First, Fourth, Sixth and Eleventh circuits have held that venue lies in the district in which the proceeding sought to be obstructed was pending. *United States v. Tedesco*, 635 F.2d 902, 904–06 (1st Cir. 1980), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981); *United States v. Kibler*, 667 F.2d 452, 454–55 (4th Cir.), *cert. denied*, 456 U.S. 961, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982); *United States v. Scaife*, 749 F.2d 338, 346 (6th Cir.1984); *United States v. O'Donnell*, 510 F.2d 1190, 1192–94 (6th Cir.), *cert. denied*, 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975); *United States v. Johnson*, 713 F.2d 654, 658–59 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); *United States v. Barham*, 666 F.2d 521, 523–24 (11th Cir.), *cert. denied*, 456 U.S. 947, 102 S.Ct. 2308, 73 L.Ed.2d 1309 (1982). This circuit, the Seventh, and the District of Columbia Circuits have held that venue lies only where the acts of obstruction occur. *United States v. Brothman*, 191 F.2d 70, 72–73 (2d Cir.1951); *United States v. Nadolny*, 601 F.2d 940, 942–43 (7th Cir.1979); *United States v. Swann*, 441 F.2d 1053, 1055 (D.C. Cir.1971). *See also United States v. Wilson*, 565 F.Supp. 1416, 1423–24 (S.D.N.Y.

1983); *United States v. Bachert*, 449 F.Supp. 508 (E.D.Pa.1978).

▉ In *Brothman*, the defendant was convicted of obstruction of justice under the predecessor statute to § 1503 ·for endeavoring to suborn a federal grand jury witness. All of the acts constituting the obstruction had taken place in the Eastern District of New York, whereas the grand jury was impaneled in the Southern District. The case was prosecuted in the latter district, and we reversed on the grounds that the prosecutor failed to prove venue. We believe that *Brothman* is not fairly distinguishable from the present case, and we must either overrule it or affirm the decision of the district court. We choose to overrule it.

▉ We begin our analysis by noting that the government takes the position, which, although helpful to it in this matter, is in the nature of a concession in § 1503 cases generally, that the existence of an ongoing formal proceeding is an element of a § 1503 violation, as it is under § 1623. Although it may be debated whether we have squarely held that the pendency of such a judicial proceeding is an essential element of that crime, we have surely come very close, *United States v. Fayer*, 573 F.2d 741, 745 (2d Cir.) ("Corrupt advice under 18 U.S.C. § 1503 must relate to an investigation by the grand jury, not the F.B.I."), *cert. denied*, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978), as have other courts, *see United States v. Vesich*, 724 F.2d 451, 454 (5th Cir.1984) ("A prerequisite to any violation of section 1503 is the existence of a pending judicial proceeding known to the violator."); *United States v. Simmons*, 591 F.2d 206, 207–08 (3d Cir. 1979) (existence of pending proceeding a prerequisite); *United States v. Ryan*, 455 F.2d 728, 734–35 (9th Cir.1972) (acts allegedly constituting obstruction must bear reasonable relationship to grand jury inquiry); *United States v. Scoratow*, 137 F.Supp. 620 (W.D.Pa.1956) (*cited in* H.Rep. No. 658, 90th Cong., 1st Sess. 2, *reprinted in* 1967 U.S.Code Cong. & Ad.News 1760, 1761, with respect to proposed enactment

of 18 U.S.C. § 1510 (1976)); *cf. Pettibone v. United States*, 148 U.S. 197, 207, 13 S.Ct. 542, 546, 37 L.Ed. 419 (1893) (obstruction can only arise when justice is being administered). In view of the government's concession, made in its brief and repeated in oral argument, and of the ample authority supporting it, we now hold that the existence of an ongoing proceeding is an element of a § 1503 violation. That being so, the prior discussion of the perjury count is virtually dispositive.

Reed argues nevertheless that the legislative history of § 1503 indicates that venue is limited to the place where the obstructive conduct took place. The origins of § 1503 are found in the Judiciary Act of 1789, ch. 20, § 17, 1 Stat. 73, 83 (1789), which established the lower federal courts and granted them broad contempt power. Until 1831, conduct now illegal under § 1503 was punishable as contempt of court. *See* Nelles & King, *Contempt by Publication in the United States Since the Federal Contempt Statute*, 28 Colum. L.Rev. 525, 531 (1928). However, abuses of the contempt power ensued, culminating in the controversy surrounding Judge James H. Peck in 1830. Peck, a district judge in Missouri, was impeached by the United States House of Representatives and tried by the United States Senate for abusing the contempt power by imprisoning a lawyer for publishing a letter critical of one of his judicial decisions. The publication occurred outside the jurisdiction of Peck's court.

Members of Congress emphasized throughout the Peck trial that the contempt power should be limited to those situations in which it was necessary for the preservation of judicial functions. "Of paramount concern to Congress was the violation of procedural safeguards, including the venue protections, that use of the contempt power entails." Note, *Criminal Venue in the Federal Courts: The Obstruction of Justice Puzzle*, 82 Mich.L.Rev. 90, 99 (1983). *See also* A. Stansbury, *Report of the Trial of James H. Peck*, 87–89, 438–39, 445–46 (1833).

Shortly thereafter, and in response to the Peck imbroglio, Congress amended the Judiciary Act of 1789 to curtail the contempt authority of the lower federal courts. Act of Mar. 2, 1831, ch. 99, 4 Stat. 487 ("1831 Act"). Section 1 of that enactment provided the federal courts with summary power to punish contempts occurring "in the presence of said courts or so near thereto as to obstruct the administration of justice." *Id.* § 1, 4 Stat. at 488. Section 2, however, required that prosecution of all other contempts be conducted according to regular judicial procedures, including prosecution by indictment. *Id.* § 2, 4 Stat. at 488. Section 2 of the 1831 Act is the predecessor of current § 1503. Congress thus determined that obstructive conduct outside the presence of a court does not create an emergency sufficient to justify the use of summary contempt power, in contrast to direct contempts where the contumacious acts occur within the court's presence.

Reed argues that concern over venue limitations and other procedural safeguards for defendnts was a prime cause for Congress' eliminating summary contempt powers over conduct outside the presence of the court. However, the only reference to venue in the legislative history of § 1503's predecessor is Rep. McDuffie's condemnation of any use of the contempt power that would permit the Supreme Court to dispatch federal marshals "to South Carolina or Louisiana" to summarily arrest and bring before it persons who had libeled the Court. *See* A. Stansbury, *Report of the Trial of James H. Peck* 89 (1833). McDuffie pointed out that summary contempt might allow punishment "in utter disregard of all the constitutional guarantees, which secure to every citizen the right 'to a speedy public trial by an impartial jury of the state and District wherein the crime shall have been committed.'" *Id. See United States v. Kibler,* 667 F.2d 452, 456 (4th Cir.) (dissenting opinion), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982).

The concerns expressed by Rep. McDuffie are of little aid to Reed. They relate only to the particularities of the impeach-ment of Judge Peck, where the libel occurred in a distant forum and was in no way under the aegis of the judge's court. The situation in which obstructive acts in one location are intended to affect a proceeding pending elsewhere is entirely different and does not raise the same spectre of a wholly attenuated connection.

As was the case with the perjury count, the source of federal jurisdiction and the locus of harm are in the district of the pending parent proceeding. The principal difference we perceive with regard to venue for perjury and for obstruction of justice is that, unlike the evidence in a perjury case, evidence of obstruction may more likely be in the district in which the acts occur. This, for example, would be the case where potential witnesses are threatened or physically harmed. Nevertheless, the existence of evidence elsewhere is also the case when a criminal contempt proceeding is brought in the district where the court order was issued rather than where the contumacious acts took place or when a Hobbs Act prosecution (or prosecution under another such statute) is brought in the district where the effects occurred rather than where the criminal acts took place. It is established, however, that venue is proper in those cases.

Finally, Reed argues that the fact that he·is alleged only to have endeavored to obstruct the Southern District proceeding, and not to have actually obstructed it, defeats venue in that district. We disagree. The contacts with the Southern District for jurisdictional and enforcement purposes are no less because the attempt to obstruct the proceeding there failed.

We hold, therefore, that venue under § 1503 is proper in the district in which the proceeding sought to be obstructed is pending even though the would-be obstructive acts took place elsewhere.

Reversed.