UNITED STATES of America,

v.

Evgueni KOROLKOV and Ekaterina Korolkova, Defendants.

No. S 1 94 Cr. 691 (RWS).

United States District Court,
S.D. New York.

Dec. 7, 1994.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Dietrich L. Snell, Asst. U.S. Atty., of counsel), for U.S.

Leonard F. Joy, Legal Aid Soc., Fed. Defender Div., New York City (Julie Prag Vianale, of counsel), for defendant Ekaterina Korolkova.

*OPINION*

SWEET, District Judge.

The defendant, Ekaterina Korolkova (Korolkova) has moved to dismiss the indictment filed against her for lack of venue. The Government has moved to take foreign depositions to support its indictment.

### Prior Proceedings

Korolkova was initially arrested in San Francisco on August 29, 1994, arrived in this district on September 14, 1994 and was presented with the complaint on the next day. Korolkova was charged in a ten count indictment with substantive violations under the bank fraud statute (18 U.S.C. § 1344) (counts one through five) and the wire fraud statute (18 U.S.C. § 1343) (counts six through ten) filed on September 28, 1994.

A superseding indictment was filed on November 15, 1994, alleging that on August 5, 1994 an unauthorized wire transfer of $218,000 was made via the Citibank Cash Management System ("CCMS") from a Citibank account owned by a bank in Jakarta, Bank Artha Graha ("Bank Artha Graha account"), to an account maintained by a San Francisco entity entitled Primorye (USA) Corp. at the Bank of America in San Francisco. ("The Jakarta transfer"). Primorye (USA)'s president is alleged to be Evgueni Korolkov, the defendant's husband.

The superseding indictment further alleges that on August 5, an unknown person made an unauthorized transfer of $304,000 via the CCMS from a Citibank account owned by Banco Del Sud, a bank in Buenos Aires ("Banco Del Sud account"), to an account maintained by a California partnership called Shore Co. at Bank of America in San Francisco. Korolkova and her husband are alleged to be two of Shore Company's partners.

The initial indictment did not include the allegations surrounding the Jakarta transfer.

The initial indictment alleged a fraudulent scheme intended to move $193,300 from the Citibank account of a customer in Buenos Aires, Invest Capital, S.A. ("Invest Capital") to five different accounts in San Francisco and alleged that on August 17 and 18, 1994, Korolkova opened five bank accounts in her own name in San Francisco, California and that approximately one week later money was wired into those accounts from Invest Capital's Citibank account. The amount of

unauthorized transfers totalled $199,300. The indictment alleged that the transfers were fraudulent because they were not authorized.

The Government claimed venue in this district based on the allegations that all wire transfers within Citibank's global banking system are routed through New York City.

On November 2, 1994 Korolkova's motion to dismiss the indictment on the grounds of improper venue and the Government's motion to take foreign depositions in support of its indictment were heard.

On November 15, the grand jury returned a superseding indictment in this case. According to this indictment, the funds were wired from the Jakarta, Buenos Aires and Invest Capital [1] accounts to San Francisco via Citibank's "Citibank Cash Management System" (the "CCMS"). This system permits a Citibank customer to access a computer network through a password and execute wire transfers of funds from an account at Citibank, or one of its affiliates, to accounts at other financial institutions. All CCMS money transfers were routed through Citibank's wire transfer department located at 111 Wall Street, which is located in this district.

The superseding indictment adds a conspiracy count to the original ten counts, adds Evgueni Korolkov (Ekaterina Korolkova's husband) as a defendant and includes the Jakarta transfer in the indictment. The superseding indictment also places the situs of the Banco Del Sud, Bank Artha Graha and Invest Capital accounts in New York and adds that the allegedly unauthorized transfers resulted in a loss to Citibank of approximately $23,000.

### Venue is Proper

■ The Constitution in two provisions guarantees criminal defendants the right to trial in the location where the offense was committed. Article III, section 2 provides that "[t]he trial of all crimes ... shall be held in the State where the said Crimes shall have been committed." The Sixth Amendment of

---

**1.** The initial indictment also described the transfers via the CCMS from the Invest Capital account to the five San Francisco accounts.

the Constitution restates this guarantee, providing that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Rule 18 of the Federal Rules of Criminal Procedure codifies this guarantee, stating that a defendant is entitled to be prosecuted in "a district in which the offense was committed."

■ It is the Government's burden to show that a particular district has constitutional venue. *See United States v. Potamitis,* 739 F.2d 784, 791 (2d Cir.), *cert. denied,* 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984).

Congress has enacted no specific venue provisions applicable to wire and bank fraud provisions. The Supreme Court has held that where Congress has not explicitly specified the proper venue for a particular offense, courts should look to "the nature of the crime alleged and the location of the act or acts constituting it." *Travis v. United States,* 364 U.S. 631, 635, 81 S.Ct. 358, 361, 5 L.Ed.2d 340 (1961).

In addition, because some offenses are continuing in nature and thus are not restricted to one district, Congress has adopted a broad statutory definition for constitutional venue to accommodate such circumstances:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and competed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a); *see also United States v. Reed,* 773 F.2d 477, 480 (2d Cir.1985) ("where the acts constituting the crime and the nature of the crime charged implicate more than one location, the constitution does not command a single exclusive venue"). Additional, the statutory definition of a continuing offense includes "[a]ny offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of an object or person into the United States," and venue for the prosecution of such an offense "in any district from, through, or into which such commerce, mail matter or imported object or person moves." 18 U.S.C. § 3237(a).

The Court of Appeals has identified four factors to be considered in determining whether a particular district has proper venue: (1) the site of the defendant's acts; (2) the elements and nature of the crime; (3) the locus of the effect of the criminal conduct; and (4) the suitability of the district for accurate factfinding. *United States v. Reed,* 773 F.2d at 481; *see also United States v. Beech-Nut Nutrition Corp.,* 871 F.2d 1181 (2d Cir.), *cert. denied,* 493 U.S. 933, 110 S.Ct. 324, 107 L.Ed.2d 314 (1989) (confirming continuing validity of "substantial contacts" test).

### Venue is Established for the Bank Fraud and Wire Fraud Counts

■ Under an application of the *Reed* considerations to the facts of this case, the Government has established venue in this district.

The first factor, the location of the defendants' acts does not support venue in this district. The only acts attributed to Korolkova occurred in San Francisco.

The second factor, includes the elements and the nature of the crime. None of the elements of any of the crimes is alleged to have occurred in this district.

The crime of wire fraud, in relevant part, is defined as follows:

> Whoever, having devised or intending to devise any scheme ... to defraud ... transmits or causes to be transmitted by means of wire ... in interstate commerce, any writings, ... signals ... for the purpose of executing such scheme or artifice ...

18 U.S.C. § 1343.

There are no allegations in the indictment that a person or persons in New York transmitted anything or caused the transmission from New York. While money was allegedly transmitted through New York in response to a request for transmission, there are no allegations that place the act of initiating of that transmission in New York.

Similarly the charge of bank fraud, in relevant part, requires that:

> Whoever knowingly executes, or attempts to execute, a scheme ... (1) to defraud a financial institution; or (2) to obtain any of the moneys....

Again there are no allegations that the scheme or artifice was executed in New York.

The third *Reed* factor is the locus of the effect of the criminal contact. The fraudulent wire transfers were designed, as alleged by the Government, to defraud Citibank and to remove funds from the Banco Del Sud, Bank Artha Graha, and Invest Capital Citibank accounts. The superseding indictment places these accounts at Citibank in New York.

There is admittedly some confusion about where the targeted accounts are located. The superseding indictment states that the three foreign entities maintained accounts with Citibank in New York. This is in conflict with the affirmance submitted with the Government's motion to take foreign depositions which places the targeted accounts in Jakarta and Buenos Aires. The complaint also describes the transfers from the Invest Capital account as being "made from the account of a Citibank customer in Buenos Aires" Compl. ¶ 2b and those from the Jakarta bank as transfers "from Jakarta to the Primorye (USA) Corp." Compl. ¶ 3.

At oral argument, the Government stated that "[c]ustomers of Citibank have accounts with Citibank, and those accounts are *considered* by Citibank to be located in New York." (emphasis added) (Tr. at 14). Earlier in the hearing, however, when describing what happened at 111 Wall Street, the Government did not indicate that the accounts were in New York. Instead the Government stated the Wall Street office "did bookkeeping as to the accounts where the funds were coming from." This certainly implied that the funds were coming from somewhere else.

If the Government fails to prove that the accounts were located in New York then the defendant will be free to raise her objection to venue at that time. The current indictment, on its face, does however satisfy the venue requirements. *See United States v. Wheaton*, 463 F.Supp. 1073, 1076 (S.D.N.Y.), *aff'd sub nom. United States v. Williams*, 614 F.2d 1293 (2d Cir.1979).

In *Reed* the Court of Appeals noted that "places that suffer the effects of a crime are entitled to consideration for venue purposes. Such districts have an obvious contact with the litigation in their interest in preventing such effects from occurring." 773 F.2d 477.

While there may also be effects of the crime in Indonesia and Argentina, that does not negate the effect of the crimes here.

As to the fourth factor, the suitability of each district for accurate factfinding, the Government alleges that there are witnesses regarding the transfers out of the accounts and the workings of the CCMS system who are located in this district. There will, of course, be substantial fact finding outside of this district, too. Witnesses as to the acts of Korolkova are presumably located in San Francisco. Critical witnesses are located in the foreign countries where the unauthorized transfers were discovered. This factor does not weigh heavily in favor of venue in this district, but it does provide some support.

Neither Korolkova nor the Government has located any authority dealing with the question of venue with respect to the sort of electronic transfers here at issue. Consideration must therefore be given to the most analogous authorities available.

In *Reed*, a case involving charges of perjury and obstruction of justice in which no overt acts were alleged to have occurred in the Southern District of New York, the Court found that "the locus of the intended effects was in the Southern District of New York because the alleged perjury was intended to affect the outcome of an action pending there." 773 F.2d at 484. In addition, the Court found that "the witnesses necessary to prove or disprove the falsity of Reed's statements are at least as likely to be in the Southern District of New York as [the other district]." 773 F.2d at 484. Finally, the Court concluded that the elements and nature of Reed's crime were "inextricably bound to the Southern District of New York" *Id.* at 483 because his testimony was ancil-

lary to the Southern District civil action, he gave his oath pursuant to that district's rules and was shielded by a protective order secured in that district. In this case the defendants' fraudulent scheme was designed to take money from three accounts in this district. Success of the scheme required a significant effect here.

In *United States v. Candella*, 487 F.2d 1223 (2d Cir.1973) falsified documents were accepted in the Brooklyn branch office of the City Department of Relocation. The documents were, in the normal course of business, routed to the main office of the Department in Manhattan. Since the offense "immediately contemplated Manhattan," venue in this district was upheld. Again, this scheme immediately contemplated taking money from accounts that were in this district. The logic of *Candella* supports the notion that there is venue in this case.

The Government has urged that *United States v. Gilboe*, 684 F.2d 235 (2d Cir.1982) allows this Court to find venue simply because the funds passed through New York. There, the Court of Appeals applied 18 U.S.C. § 3237(a) in affirming venue in an action wire fraud and transportation of funds obtained by fraud where "the proceeds of the fraud were all transferred through New York so that such commerce moved from, through or into New York...." The Government maintains that venue is proper in New York simply because the funds passed through the CCMS system at 111 Wall Street. The *Gilboe* facts, however included an additional basis for venue in this district and the Court sustained venue, at least in part, on "the numerous telexes and telephone calls between New York and Hong Kong and other parts of the world." 684 F.2d at 239. The transfer through New York financial institutions was an intended and calculated part of the scheme.

As in *Gilboe*, there are additional allegations such as the location of the three accounts and the loss of funds to Citibank that tie the effects of these alleged crimes to New York City.

### Venue is Established for the Conspiracy Count

■ In its superseding indictment, the Government added the charge of conspiracy to commit bank fraud and wire fraud. Venue lies in this district for this charge.

The Court of Appeals has held that "in a prosecution for conspiracy, venue is proper in any district in which an overt act in furtherance of the conspiracy was committed by any of the co-conspirators." *United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir.1994). It is well settled that phone calls can constitute overt acts in furtherance of a conspiracy. *See Naranjo* at 147 citing *United States v. Uribe*, 890 F.2d 554, 558–59 (1st Cir.1989); *United States v. Stewart*, 878 F.2d 256, 258 (8th Cir.1989); *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). In *United States v. Naranjo*, the Court, explaining an earlier decision regarding telephone calls into the district to establish venue for conspiracy, stated "[w]e ruled that 'the phone calls alone' established venue in the Southern District." *Id.* at 147. This explanation made it clear that the phone call need not be to a co-conspirator in the district; that a call into the district was sufficient to establish an overt act for the purpose of establishing venue for conspiracy.

The Court of Appeals saw "no basis for imposing any more rigorous requirement of the phone calls than that they do further the conspiracy." *Id.* at 147. The electronic access, through the CCMS system, into the New York accounts, is the equivalent of a phone call into the district. The electronic accessing of the accounts furthered the conspiracy considerably. Having satisfied the overt act test, the Government has established venue for this count.

Venue is established for all counts.

### Motion to Take Foreign Depositions

■ Under Rule 15, courts have authority to order the deposition of a prospective witness by a party seeking to preserve that witness' testimony whenever "exceptional circumstances" exist. Fed.R.Crim.P. 15(b). The Court of Appeals has found "exceptional circumstances" to be present when the Gov-

ernment has demonstrated that a prospective witness is likely to be unavailable to testify at trial. *See United States v. Salim,* 855 F.2d 944, 949 (2d Cir.1988); *United States v. Johnpoll,* 739 F.2d 702, 709 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984).

■ It is well-settled that the "exceptional circumstances" required to justify the deposition of a prospective witness are present if that witness' testimony is material to the case and if the witness is unavailable to appear at trial. *Johnpoll* 739 F.2d at 709. *See United States v. Singleton,* 460 F.2d 1148, 1154 (2d Cir.1972), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973).

Here the government has made a proper showing that the witness testimony is material, that the witnesses will not come to this country to testify and that provisions will be made to honor the defendant's constitutional right of confrontation.

Each of the seven witnesses will testify as to the unauthorized nature of the seven separate wire transfers. The superseding indictment alleges conspiracy to commit these acts and alleges overt act relating to each of the transfers. Specifically, Jacobus Valentyn and Sayaman Nasution are employees of Bank Artha Graha in Jakarta, who supposedly requested and approved the August 5 transfer to the Primorye account. Adrianna Bruno and Olga Altamira are the employees of Banco Del Sud in Argentina who supposedly requested and approved the August 5 transfer to the Shore Company account. Eduardo Mazza and Carlos Arario are the employees of Invest Capital in Argentina who supposedly requested and approved five wire transfers on August 24 to the five bank accounts opened by Ms. Korolkova on August 17 and 18. Finally, Christian Silbergleit is the Invest Capital Employee who notified Citibank that the August 24 transfers to the five San Francisco accounts were unauthorized.

The proposed testimony of these witnesses is material to this case.

The initial papers regarding these depositions represented that Citibank had notified these potential witnesses and that they had refused to appear for trial in New York. The Government has indicated that it has also contacted the seven potential foreign witnesses and despite assurances that the Government would pay for them to travel here to testify, each has indicated an unwillingness to do so.

■ The Government is unable to compel the attendance of any of these witnesses at trial at New York. As there are not citizens of the United States and do not reside here, they are not amenable to United States subpoenas. *See* Fed.R.Crim.P. 17(e)(2); 28 U.S.C. § 1783; *United States v. Johnpoll,* 739 F.2d 702, 709 (2d Cir.1984).

In view of the defendant's incarceration, the Government has agreed to make arrangements to honor her constitutional rights. Specifically they have proposed that the depositions be videotaped and that she be permitted to monitor the proceedings by telephone. There must, of course, be a Russian interpreter available to Ms. Korolkova. Defense counsel conceded that the procedures proposed by the Government are essentially the same as those approved by the Court of Appeals in *United States v. Salim,* 855 F.2d 944, 949 (2d Cir.1988). In light of approval by that Court, these arrangements are acceptable.

Any problems that arise at the taking of these depositions can be raised at a later date. For the moment, the Government has demonstrated that the testimony of these witnesses is material and will only be available at trial if taken in Jakarta and Buenos Aires. The Government's motion is granted.

*Conclusion*

Korolkova's motion to dismiss all counts for lack of venue is denied. The Government's motion to take seven foreign depositions is granted.

. It is so ordered.