THOMAS, J.,
Dissenting.
¶ 48. The majority finds the location of the intended effects is sufficient both constitutionally and statutorily to vest proper venue in Panola County. Because I disagree with this interpretation, I respectfully dissent.

Constitutional Issues

¶ 49. As the majority points out, the framers of the United States Constitution were sufficiently concerned with venue in criminal prosecutions to raise the point twice within that document. In both instances, the Constitution directs that criminal conduct be prosecuted in the jurisdiction in which the crime was committed. U.S. Const, art. Ill § 2, cl. 3, and amend. VI.
¶ 50. Courts have struggled with the definition of “committed” in this context, particularly in instances when elements of *536 the criminal conduct occurred in more than one jurisdiction. In reaching its conclusions, the majority relies upon the Second Circuit case of United States v. Reed, 773 F.2d 477 (2nd Cir.1985).
¶ 51. Reed counsels that substantial contacts between the crime and a given jurisdiction based upon a balancing of four factors is a sufficient basis for constitutionally vesting venue in that jurisdiction. Id. at 481. Those four factors are: (1) the site of the defendant’s acts, (2) the elements and nature of the crime, (3) the locus of the effect of the criminal conduct, and (4) the suitability of each district for accurate factfinding. Id.
¶ 52. The difficulties with adopting this test are several. First, the progenitor of the Reed test, the Second Circuit Court of Appeals, has retreated from its use in all but a single class of crimes, those which may be classified as continuing offenses. United States v. Saavedra, 223 F.3d 85, 89 (2nd Cir.2000).[1] In its analysis, the Second Circuit explained that when the elements of a crime occur wholly within a jurisdiction other than the one where prosecution is sought, the court must then determine whether the crime may properly be defined as a continuing offense. Id. If so, the Reed factors may be applied to determine whether prosecuting in this other jurisdiction would constitutionally offend. Id. The court also recognized the rule that with respect to venue, the constitutional mandate to prosecute where the crime occurred must be cautiously construed. Id. at 92. The court thus acknowledged that substantial contacts is of very limited use and not applicable in all circumstances.
¶ 53. The Second Circuit reached this conclusion after the Supreme Court handed down two venue cases following the Reed decision. The first was United States v., Cobrales, 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998). There, the court reiterated the long-standing rule that constitutional venue must be determined from the nature of the crime alleged and the location of the act or acts constituting it. Id. The court found that Cab-rales could not be charged with money laundering in Missouri when all proscribed acts constituting the crime occurred in Florida. Id. at 8, 118 S.Ct. 1772.
¶ 54. The court specifically rejected the government’s argument that the crime of money laundering has as a necessary precursor, or element, that the funds requiring laundering derive from criminal activity and that activity had occurred in Missouri. Id. at 7-8, 118 S.Ct. 1772. The court also specifically rejected the argument that Missouri was a proper venue because of the impact on the local communities victimized by drug dealers. Id. at 9, 118 S.Ct. 1772. The court pointed out that if the offense had been a continuing one, Missouri would have a constitutional right to prosecute. Id. at 8, 118 S.Ct. 1772. With these points, the court defined some of the parameters of constitutional venue. Venue is proper in any location where the actual actions necessary to accomplish the crime charged occurred but if no actions were taken there, community impact alone is not sufficient to render venue constitutionally proper absent classification as a continuing offense.
¶ 55. The second Supreme Court decision of import was United States v. Rodriguez-Moreno, 526 U.S. 275,119 S.Ct. 1239, 143 L.Ed.2d 388 (1999). Handed down just nine months after Cóbrales, the court *537 found venue in New Jersey proper for prosecution of violation of 18 U.S.C. § 924(c)(1), using or carrying a firearm during or in relation to any crime of violence. Id. at 282, 119 S.Ct. 1289. The defendant kidnaped the victim in Texas, transported the victim to New York, then New Jersey, then Maryland where the defendant obtained a gun and used the same to threaten the victim. Id. at 277, 119 S.Ct. 1239.
¶ 56. The court once again said the locus delicti must be determined by the nature of the crime charged and the place where the acts constituting it occurred. Id. at 279, 119 S.Ct. 1239. The court also helpfully defined “nature of the crime” as the conduct constituting the offense. Id. In other words, what actions does the criminalizing statute actually proscribe? In Rodriguez-Moreno, the prohibited activity was the use of a gun in the course of a violent crime. The substantive crime of violence was kidnaping, a continuing offense which only terminates once the victim is released. Id. at 281, 119 S.Ct. 1239. It did not matter the gun was not used at the crime’s inception. A gun was used at some point during the crime, thus, the prohibited activity occurred. Id. at 281, 119 S.Ct. 1239.
¶ 57. The Fourth Circuit cogently analyzed the import of these two cases as well as the status of the Reed test in United States v. Boivens, 224 F.3d 302 (4th Cir. 2000). In the absence of a statute designating venue, venue in a criminal trial is constitutionally limited to the jurisdiction where the essential conduct elements of the offense occurred. Id. at 302. Bowens reminds that the Supreme Court rejected the situs of precursor activity as proper venue, no matter how necessary to the accomplishment of the crime charged that activity may be. Id. at 309-10. These are “circumstance elements,” not “conduct elements” and only the latter is prohibited by a particular criminal statute and thereby subject to prosecution. Id. This would, of course, be different if the circumstance elements were crimes in and of themselves subject to additional prosecution.
¶ 58. In light of the Supreme Court’s strict adherence to the geography of the criminal conduct, the Fourth Circuit concluded that venue in the jurisdiction where the effects of the crime are felt is proper only when an essential conduct element is itself defined in terms of its effect. Id. at 310.[2]
¶ 59. The Supreme Court cannot make it any plainer that for constitutional venue analysis, absent extremely limited circumstances, the location where the elements of the crime actually occurred is the only valid jurisdiction for prosecution. Community impact alone, even when actual and not merely potential as in the case before us, is not sufficient to grant constitutional venue in the affected jurisdiction. Given that no prohibited conduct occurred in Pa-nola County, Holbrook could not constitutionally be prosecuted there.
¶ 60. Even if the Reed test were viable in all circumstances, the majority’s application of it is flawed. “There is nothing in Reed which says that the effects of a crime alone may ever serve as an independent basis for venue when all other considerations properly point to another judicial district.” United States v. Bin Laden, 146 F.Supp.2d 373, 378 (S.D.N.Y.2001). Reed did not contemplate that consideration of only a single one of its factors would *538 trump venue in opposition to the locus delicti. Id. Rather, there should be a majority of the factors in favor of the jurisdiction outside which the actual conduct elements occurred before prosecution there is constitutionally proper. Id. Bin Laden also points out a practical difficulty with the Reed analysis. All of the cases relied upon for finding effects of the crime a legitimate concern were based upon cases in which the criminal statute did, in fact, define the specific conduct elements of the crime in terms of its effect. Id. This explanation makes clear that prosecution in the jurisdiction where the conduct elements occurred must be defeated before it can be validly placed in another jurisdiction. The locus delicti must be outweighed by the application of the remaining factors or by statute:
Reed does not — -indeed could not — stand for the proposition that venue may properly be based where solely the effects of the crime are located.... [A]ny consideration of the putative external effects of [the crime] would require the court to base venue on just one factor and on a factor which is not even an element of the relevant criminal statute.
Id. at 380.
¶ 61. All agree that in the case before us, all of the actions required to complete the crime of attempted arson were completed in Tate County. If the Reed factors were actually applicable, the analysis would still point solely to Tate County for venue. Holbrook acted solely within Tate County, all of the elements of the crime were committed there, all of the law enforcement officers who would need to testify are in Tate County, any witnesses associated with the preparatory actions such as the purchase of the gasoline are in Tate County. The only thing that may be interpreted as favoring Panola County is that the intended “victim” lay within its borders. That is not enough. It is even less so when considering that Reed contemplates an actual effect, legally speaking, to have occurred, not merely the potential for an effect. This point is further discussed below.

Statutory Issues

¶ 62. A second ground upon which the majority bases its conclusion is a statute, Mississippi Code Section 99-11-19 (Rev. 2000). This section reads:
When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced prosecuted, or consummated, where prosecution shall be first begun.
¶ 63. The majority finds the word “effects” within this statute sufficient to vest valid venue in Panola County. I find this an overly broad interpretation of the language inconsonant with the precedents of this state and not in keeping with the purpose for which it was enacted.
¶ 64. The statute was enacted for the purpose of abrogating the common law rule that prosecution may only be had in the jurisdiction “where the offense was consummated or if the offense consisted of a series of acts, then in a county where one of the acts was in itself a complete crime.” Rogers v. State, 266 So.2d 10, 16 (Miss.1972). The statute allows, for instance, prosecution for murder in either jurisdiction when the mortal blow is struck in one county but the victim actually dies in another. Coleman v. State, 83 Miss. 290, 297, 35 So. 937, 938-39 (1904), overruled on other grounds.
¶ 65. It was this very fact pattern before the state supreme court when “effect” under the statute was first discussed:
*539 Here the act was committed in one county and the effect produced in another. The crime was wholly completed in neither county, but partly in each. The mere striking of a blow is not murder. Its fatal effect must follow, to make the completed crime.
Id. at 298, 35 So. at 939.
¶ 66. This passage makes clear that “effect” under this statute refers to the outcome of conduct contemplated by the criminalizing statute. The federal cases discussed above speak of criminal statutes which make a particular effect a part of the essential conduct element of the crime itself. In other situations, the requirement that a certain effect be achieved in order to prosecute may or may not be inchoate but is unquestionably present. One cannot be guilty of murder unless a death occurs. One cannot be guilty of arson without a fire. There must be a particular effect, an outcome, before one can be guilty of certain crimes.
¶ 67. The crime of attempt has no such outcome requirement, inchoate or otherwise. To the contrary, the failure to produce a particular effect is an essential element of the crime of attempt: (1) the intent to commit a particular crime, (2) a direct ineffectual act done towards its attempt, and (3) the failure to consummate its commission. Edwards v. State, 500 So.2d 967, 969 (1986). There may be an effect in the sense of community fear or outrage but that is not a legal effect, it is a sociological one.
¶ 68. Our supreme court addressed a highly similar case to our own in Murray v. State, 98 Miss. 594, 54 So. 72 (1911). Murray rented land in Claiborne County from Vardaman, who took a landlord’s lien upon the cotton to be produced on the land. Id. at 600, 54 So. at 72. Instead of turning the cotton over to Vardaman, Murray transported it to Copiah County and there sold it to Kemp. Id. Murray was charged and convicted in Claiborne County for false pretenses in representing to Kemp he owned the cotton free and clear. Id.
¶ 69. Our supreme court reversed the conviction, holding that although certain facts unique to Claiborne County would have to be established in order to convict Murray of false pretenses in his dealings with Kemp, none of the acts constituting the crime itself occurred in Claiborne County. All such acts occurred in Copiah County and Copiah County alone had jurisdiction to try Murray. Id at 602-03, 54 So. at 73. All other events were “mere link[s] in the chain of evidence necessary to establish the case of false pretenses ....” Id. at 602, 54 So. at 73. This was so even though there had been an actual effect in Claiborne County — Varda-man was deprived of his property there, but this did not change the court’s decision. Instead, it pointed out there were a number of crimes Murray could have legitimately been charged with in Claiborne County, including theft. Id. at 601, 54 So. at 73. False pretenses just was not one of them and the effect was not the one contemplated by law. After all, Murray had been charged with defrauding Kemp, not Vardaman.
¶70. Throughout the history of Code Section 99-11-19, no court in this State has ever interpreted it to mean “effect” or “potential effect” as the majority does here, save perhaps one, discussed below. Although decided nearly a century ago, Murray, in analyzing Section 99-11-19, is completely in line with contemporary venue rules as established by the U.S. Supreme Court. Murray’s “links in the chain” are “circumstantial elements” in contemporary parlance. Murray fairly explains that “effect” means some outcome intended to be proscribed must occur in a *540 jurisdiction before venue there may be proper.
¶ 71. The one possible exception to this general rule is Rogers v. State, noted above. In that case, the defendants recorded fraudulent deeds for land in Harrison- County. Rogers, 266 So.2d at 12. They then traveled to Hinds County and negotiated the sale of the land to the State Highway Department for the construction of Interstate 10. Id. at 13. All negotiations, fraudulent representations as to ownership, and payment of funds by the state occurred in Hinds County but the defendants were convicted in Harrison County of false pretenses. Id. at 17.
¶ 72. The supreme court affirmed the conviction, finding that although the only thing that had actually occurred in Harrison County was the deed recordation, the filing of the deeds commenced a chain of events which were essential to the ultimate perpetration of the crime charged. Rogers, 266 So.2d at 18-19. Almost as an afterthought, the court also found the deeds had the effect of artificially inflating land prices in Harrison County. Id. at 20. “The recordation of these deeds was the center from which the web was woven to wrongfully ensnare the State’s money ... The appellant cannot presently disassociate himself from his former transactions since they were ‘the acts, effects, means’ which ‘commenced’ the chain of events culminating in the accomplished crime.... ” Id.
¶ 73. This rationale is the same as that forwarded by the federal government in Cóbrales and which the Supreme Court found unconstitutional. Whatever acts, including criminal ones, occurred before those constituting the essential conduct elements of the crime charged cannot form the basis for venue. Rogers, already a suspect case because of its solo status as amongst similar cases in state law, is thus in conflict with the Supreme Court and of extremely limited precedential value.

Conclusion

¶ 74. Both federal and state interpretation of constitutional and statutory venue requirements have settled the method by which venue may validly be determined. The first step is to determine the conduct elements of the crime charged. Second, determine the geographic location(s) where those elements occurred. If more than one jurisdiction is implicated, venue in either is appropriate. In the event the offense is a continuing one, venue may be had in any jurisdiction involved in the ongoing crime.
¶ 75. I do not object to the utilization of the Reed factors in determining which of several possible jurisdictions would be best situated to prosecute a continuing offense, but I do object to the use of a single one of those factors to determine venue in opposition to the locus delicti. This was never intended to be the case. I also object to the entirely new and extremely broad context into which the majority places the word “effects” within the -meaning of § Section 99-11-19, a context which has been rejected by the Supreme Court and which is not in keeping with prior interpretations of the statute. For these reasons, I respectfully dissent.
¶ 76. Mississippi Code Annotated § 99-11-29 (Rev.2000) provides that when there is an acquittal “on the ground of variance between the indictment and proof,” the defendant may be tried again under a new indictment and that it is “the duty of the court to order the accused into the custody of the proper officer.” The Mississippi Supreme Court has held that when a conviction is overturned on appeal for improper venue, the accused should be bound over for the next grand jury in the appropriate county. Whitten v. State, 189 Miss. 809, 199 So. 74, 75 (1940). We should *541 follow that precedent, reverse the Circuit Court of Panola County, and render judgment that Holbrook be bound over to the grand jury of Tate County.
KING, P.J., BRIDGES, LEE AND IRVING, JJ., JOIN THIS SEPARATE WRITTEN OPINION.

. That court has not recently addressed the question of the Reed factors in relation to venue in ongoing court cases. As it is not a concern in the present case, it need not be addressed here.

. Examples include 18 U.S.C. § 1951, obstruction, delay, or affecting commerce through robbery, extortion or threat of violence; and 18 U.S.C. § 1503, influencing, intimidating, or impeding a witness, or influencing, obstructing, or impeding the administration of justice.