David S. SOLIZ, Appellant,

v.

The STATE of Texas.

No. 100–02.

Court of Criminal Appeals of Texas.

Jan. 29, 2003.

Brenda Doucette, Houston, for appellant.

John F. Healey, Jr., Dist. Atty., David C. Newell, Asst. Dist. Atty., Richmond, Matthew Paul, State's Atty., Austin, for state.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, MEYERS, PRICE, WOMACK, KEASLER, HERVEY and HOLCOMB, J.J., joined.

▆▆▆ Appellant was convicted in Fort Bend County of misdemeanor perjury, based on a false statement he made in a civil deposition taken in Harris County. The court of appeals, finding the evidence insufficient to prove venue in Fort Bend County, reversed. *Soliz v. State*, 60 S.W.3d 162 (Tex.App.-Houston [14th Dist.] 2001). We granted the State's petition for review [1] and hold that venue for a perjury prosecution, that is based on a false statement made in a party's deposition, lies both in the county in which the deposition was taken and in the county in which the underlying lawsuit is pending. For purposes of the perjury venue statute,[2] deposition testimony by a party in a civil lawsuit is "used or attempted to be used" in the county in which the underlying lawsuit is pending as soon as that party makes a false statement in his sworn deposition with the intent to deceive and with knowledge of the statement's meaning.

### I.

Appellant sued Apollo Paint and Body and its owner, Farouk Al Attar ("Apollo"), in small claims court in Fort Bend County. He alleged that Apollo converted appellant's personal property—several model cars, a desk and a 1989 Ford Mustang—when appellant's employment with Apollo ended. Appellant also sued Apollo, in Harris County, for breach of contract. When Apollo's lawyer, Don Willman, deposed appellant in the Harris County breach of contract matter, appellant, represented by his then-lawyer, Steve Menn, swore he had graduated from the University of Houston.

Appellant won a default judgment in the Fort Bend County conversion case, but Apollo appealed de novo to the county court. Apollo's lawyer in this case, William Harmeyer, deposed appellant in Harmeyer's law office in Harris County. Harmeyer had apparently discovered that

1. We granted review on the following questions:
 1. Did the Court of Appeals improperly read into the perjury venue statute a requirement that the State must demonstrate that a defendant who has sworn falsely in a Harris County deposition has also re-offered this false testimony as the truth in Fort Bend County in order to establish venue in Fort Bend County?
 2. Does the Court of Appeals's interpretation of the perjury venue statute requiring an "act" of perjury in Fort Bend County ignore express language contained in article 13.03 of the Texas Code of Criminal Procedure and render the statutory phrase "attempted to use" a nullity thereby frustrating the clear legislative intent

 embodied in the statutory provisions dealing with perjury?
 3. Is venue proper for misdemeanor perjury in a county where a false statement is used for purposes of impeachment against the defendant by someone other than the defendant?
 4. Did the Court of Appeals err in denying venue for misdemeanor perjury in Fort Bend County even though the Court expressly acknowledged that a false statement was used in Fort Bend County?

2. Tex.Code Crim. Proc. art. 13.03 ("Perjury and aggravated perjury may be prosecuted in the county where committed, or in the county where the false statement is used or attempted to be used").

appellant had testified falsely in his first deposition that he had graduated from the University of Houston. Thus Harmeyer, in this second deposition, questioned appellant extensively about his college education.[3] Appellant maintained that he had a finance degree from the University of Houston. When the conversion lawsuit went to trial in the Fort Bend County court, appellant testified and admitted, on cross-examination, that he had lied about the degree in both depositions. In fact, he stated, he never attended the University of Houston or any college.

He blamed his lawyer, Mr. Menn, and said that Mr. Menn told him that "no matter what I say in these depositions, it doesn't matter; no one looks into them.... He had advised me that depositions are a form of trickery; and in order to fight trickery, you apply trickery[.]" Appellant said he had lied under oath "[b]y

---

3. Pertinent portions of the second deposition—which appellant attended without his lawyer—were read into the record at the perjury trial:

Question: Where did you go to college at?
Answer: University of Houston.
Question: Did you graduate?
Answer: Yes.
Question: What did you get a degree in?
Answer: Business and finance.
Question: Business and finance?
Answer: Finance.
Question: When did you graduate?
Answer: 1983.
Question: Went through an accelerated program?
Answer: Yes, sir.
Question: What was your major and what was your minor?
Answer: Oh, my major was in business and my minor was in psychology.
Question: Is that on the main campus?
Answer: Yes.
Question: You didn't go to the Clear Lake campus or downtown campus?
Answer: No.
Question: Did you work at all when you were in high school?
Answer: Yes, I did.
* * *
Question: And you do understand here today that you are sworn under oath to tell the truth here today?
Answer: Correct.
Question: And that this deposition can be used at the time of trial just as if you were testifying live at trial?
Answer: I understand that.
Question: And the penalties of perjury apply to this deposition just the same as if you were testifying live at trial?
Answer: Understood.
* * *
Question: Okay. You got your degree from the University of Houston main campus, 1983, correct?
Answer: Correct.
* * *
Question: Let me hand you what's marked as Defendant's Exhibit No. 8. Let me just represent to you that was our written confirmation that you went to the University of Houston and the second page indicates that they have no record of your attendance.
Answer: Huh?
Question: Do you know why that might be?
Answer: No, I sure don't.
Question: Where is your degree? Is it hanging on a wall somewhere?
Answer: No, if I remember correctly it was in my desk at Apollo.
Question: Did you display it on the wall at Apollo?
Answer: We didn't do anything of such.
Question: Is there anybody that can confirm that you went to the University of Houston and got a degree?
Answer: Yeah. Shoot.
Question: Who would that person be?
Answer: I'll have to give you that. I don't know right off.
Question: Do you have any old classmates that you still communicate with?
Answer: No.
* * *
Question: Can you get me some confirmation you ever got a degree from the University of Houston?
Answer: Okay.
Question: When can you get that stuff for me?
Answer: Probably in the next couple of business days.

his [attorney's] advice." [4] Still, appellant admitted that he knew, during his deposition, that: 1) he was sworn under oath to tell the truth; 2) the deposition could be used at the time of trial, just as if he were testifying live; and 3) the penalties of perjury applied to his deposition, just as if he were testifying live at trial. After appellant testified at the civil conversion trial that he had lied in his earlier depositions, the Fort Bend County District Attorney charged him with perjury, a Class A misdemeanor. [5]

At the perjury trial, appellant again tried to excuse his behavior. He said that he attempted to be truthful and honest in his deposition regarding the facts about the property conversion dispute, but that he did not make that same effort when relating his personal background because his attorney had left him with the impression that "the background stuff" would not matter. Appellant's defense to the perjury prosecution was that *he* never attempted to use the deposition testimony in the civil trial. [6]

At the close of evidence, appellant moved for a directed verdict on the ground that the State failed to prove venue in Fort Bend County, because the deposition itself was taken in Harris County. The State's position was that the physical location of the deposition did not change the fact that the perjury was committed in a Fort Bend County lawsuit. The trial court denied appellant's motion for directed verdict. The jury convicted appellant and sentenced him to one year in jail, probated, and a $500 fine.

On appeal, appellant argued that the trial court erred in denying his motion for directed verdict based on improper venue. He claimed that the State had not proven venue in Fort Bend County because there was no evidence that *he* ever attempted to use his false deposition testimony in that county. The Court of Appeals agreed, reversed the conviction, and remanded the case to the trial court with instructions to dismiss the information. [7] We granted review.

---

4. Mr. Menn testified at the perjury trial that he did not tell appellant that he could or should lie during his deposition. He stated that he warned appellant that an opposing lawyer might try to use "trickery," or words to that effect.

5. See TEX. PEN.CODE ANN. § 37.02(a)(1) ("A person commits an offense if, with intent to deceive and with knowledge of the statement's meaning ... he makes a false statement under oath or swears to the truth of a false statement previously made and the statement is required or authorized by law to be made under oath"). The offense of perjury is complete when a person makes a willful and deliberate false statement under oath. *In re Davila*, 631 S.W.2d 723, 725 (Tex.1982).

6. In response to questioning by his attorney, appellant testified:

Q: Did you introduce the deposition to the trial court?
A: No, I did not.

Q: Did you bring up the deposition to the trial court?
A: No, I did not.
Q: At any time did you intend to deceive the trial court?
A: Absolutely not.
Q: Regarding your education, your college education?
A: No, ma'am.
Q: When you were questioned regarding your college education, did you try to or did you tell the truth at trial?
A: Yes, I did.
 * * *
Q: Did you testify truthfully and honestly for the Court here in Fort Bend?
A: I did.
Q: Did you at any time attempt to use the false statement from the deposition in Fort Bend County, Texas?
A: No, ma'am.

7. *Soliz*, 60 S.W.3d at 166. The court of appeals did note that "[o]ur holding does not preclude the State from prosecuting appellant

## II.

■ At common law, venue meant the "the neighborhood, place, or county in which an injury is declared to have been done, or fact declared to have happened."[8] More technically, it means the county or district in which a court with jurisdiction may hear and determine a case.[9] In Texas, if the Legislature has not specified venue for a specific type of crime, then "the proper county for the prosecution of offenses is that in which the offense was committed."[10] Special venue statutes, however, expand the number of counties in which an offense may be prosecuted. These special venue statutes have been enacted for various reasons, such as: 1) the difficulty of proving precisely where the offense was committed;[11] 2) the location where evidence of the crime is found;[12] 3) the effect that a crime may have upon several different counties;[13] or 4) the effect that the actor may have upon various counties.[14] Texas venue statutes are a species of codified "substantial contacts" jurisdiction; thus, for venue to lie,

the defendant, his conduct, his victim, or the fruits of his crime must have some relationship to the prosecuting county.[15] The Legislature has specified the types of contacts that satisfy this "substantial contacts" threshold for various offenses.

There is a special venue statute for perjury and aggravated perjury, which states that these offenses "may be prosecuted in the county where committed, or in the county where the false statement is used or attempted to be used."[16] The special venue rule for perjury thus increases the number of counties in which perjury may be prosecuted.

Few Texas cases have specifically addressed what the statutory phrase "used or attempted to use a false statement" means in a perjury prosecution. Frequently the matter is obvious. For example, a perjury prosecution based on a sworn statement made by a party-witness in Deaf Smith County, and then introduced into evidence by that same party in a pending Jim Hogg County case, could, of

in the proper county," presumably Harris County where the deposition itself was taken.

8. BLACK'S LAW DICTIONARY 1079 (6th ed.1991).

9. See *Martin v. State*, 385 S.W.2d 260, 261 (Tex.Crim.App.1964) (stating that " '[v]enue,' as applied to criminal cases, means the place in which prosecutions are to begin"); *Williams v. State*, 145 Tex.Crim. 536, 540, 170 S.W.2d 482, 485 (1943).

10. TEX.CODE CRIM. PROC. art. 13.18.

11. *See, e.g.,* TEX.CODE CRIM. PROC. art. 13.04 (offenses committed close to county boundaries may be prosecuted in either county).

12. *See, e.g.,* TEX.CODE CRIM. PROC. art. 13.08 (theft may be prosecuted in county where the actor unlawfully obtained the property or where he transported it).

13. *See, e.g.,* TEX.CODE CRIM. PROC. art. 13.02 (forgery may be prosecuted in the county

where the writing was originally forged or in any county in which the forged document was used or attempted to be used or where it was deposited for collection, or, if the forgery relates to land, in the county where the land itself is located).

14. *See, e.g.,* TEX.CODE CRIM. PROC. art. 13.13 (criminal conspiracy may be prosecuted in the county in which the agreement was made, where it was to be carried out, or where any conspirator performed any act to achieve an object of the conspiracy).

15. *See generally* GEORGE DIX & ROBERT DAWSON, 40 TEXAS PRACTICE § 2.41 (2001) (noting that all of the Texas special venue rules increase the number of counties in which an offense may be prosecuted; each provides that venue lies in the county in which the offense was committed and in some other county connected, in a specified manner, to the offense).

16. TEX.CODE CRIM. PROC. art. 13.03.

course, be prosecuted in either county. But a statement need not be formally introduced into evidence by the party-witness himself to be considered "used."

In *Carter v. State*,[17] for example, this Court held that, when a defendant in an underlying criminal case attached juror Carter's affidavit, which allegedly contained false statements, to his motion for a new trial, the juror's affidavit had been "used" in the underlying criminal proceedings. Specifically, we stated:

> "under the statute defining perjury ... it was not necessary that the affidavit be introduced in evidence if it was attached to the motion for a new trial. The affidavit, together with the motion, was presented to the court with the view and for the purpose of obtaining a new trial on the facts therein stated and thus brought it within the purview of the State." [18]

Thus, for purposes of prosecuting the juror for perjury, the juror's affidavit, attached to a motion filed in court *by someone* in the underlying criminal proceeding in which the actor had been a juror, had been "used or attempted to be used" for purposes of the perjury statute.[19]

A half century later, the Eastland Court of Appeals reached a similar conclusion on an analogous issue. In *Hutcheson v. State*,[20] the court of appeals addressed whether a false statement in a divorce suit deposition was false testimony made "in connection with an official proceeding" for purposes of the aggravated perjury statute. The court found that it was:

> Appellant's deposition was taken in order to discover, evaluate, plan, and prove information to be used in connection with the divorce proceeding. Consequently, the deposition was taken 'in connection with' the divorce hearing at which property rights and other issues were to be adjudicated. In fact, most depositions are taken after the commencement of a lawsuit.[21]

Underlying the *Carter* and *Hutcheson* holdings, as well as the Texas aggravated perjury statute (which penalizes material perjury made in, or in connection with, an official proceeding) is the recognition that perjury—whether it occurs during a deposition, in an affidavit, in grand jury proceedings, or at trial on the merits—hinders the accurate resolution of ancillary or parent legal proceedings.

That same recognition underlies *United States v. Reed*,[22] in which the Second Circuit held that venue for perjury lies both where the perjury is committed and where the underlying lawsuit is pending.[23] Reed was indicted for perjury in the Southern District of New York for alleged false statements he made in a deposition taken in San Francisco. The deposition was taken in a civil suit pending in the Southern

---

17. 140 Tex.Crim. 324, 144 S.W.2d 582 (1940).

18. *Id.* at 332, 144 S.W.2d at 586.

19. *Id.*

20. 980 S.W.2d 237 (Tex.App.-Eastland 1998, pet. ref'd)

21. *Id.*

22. 773 F.2d 477 (2nd Cir.1985).

23. *Id.* at 483. In *Reed,* the court was bound by the explicit wording of the federal venue rule, which requires that perjury be prosecuted "in a district in which the offense was committed." *Id., see* Fed. R.Crim. Proc. 18: ("Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed. The court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.").

District of New York.[24] Reed successfully moved to dismiss the perjury count for lack of venue because he made the false statements in San Francisco, not New York. The Second Circuit reversed and held that, to determine whether the application of a venue provision in a given prosecution comports with constitutional safeguards, a court should ask whether the criminal acts in question bear "substantial contacts" with a given venue.[25]

The *Reed* court considered four factors: (1) the site of the crime; (2) the crime's elements and nature; (3) where the effects of the criminal conduct are felt; and (4) the chosen venue's suitability for accurate factfinding.[26] The court noted that "[s]o far as the nature of the crime was concerned, Reed's testimony was inextricably bound to the Southern District of New York,"[27] and "the locus of the intended effects of the alleged criminal conduct was in the Southern District of New York because the alleged perjury was intended to affect the outcome of an action pending there."[28] Furthermore, "the witnesses necessary to prove or disprove the falsity of Reed's statements are at least as likely to be in the Southern District as in California."[29] After analyzing the relevant factors, the court concluded that perjury committed in a deposition taken in one district for a lawsuit pending in another district may be prosecuted in either.[30]

Other federal and state courts—recognizing that the *Reed* rule offers useful guidance in determining whether a specific venue is constitutional when the defendant's acts did not occur within the district selected as the venue for trial—have followed *Reed*.[31] The result in those cases is

---

24. Mr. Reed and seventeen other defendants were sued by sellers of stock options for making insider purchases of call options and thus defrauding those who had sold the options to the defendants. 773 F.2d at 478.

25. *Id.* at 481.

26. *Id.*

27. *Id.* at 483.

28. *Id.* at 484. The court noted that "perjurious testimony is fully analogous to contumacious conduct":

> A party who violates a court order is subject to the issuing court's contempt sanctions no matter where the actions constituting the contempt take place. Power to punish perjury is as necessary to ensure the integrity of a court's proceedings as is power to punish contempt. As in the case of criminal contempt, a court unable to punish false testimony affecting its proceedings would be at the mercy of the limited resources and prosecutorial priorities of a foreign district, and the risk would be great that perjurious conduct would go unpunished.

*Id.* That is, the district or county in which the lawsuit is pending has a much greater interest in the accurate and fair outcome of its own legal proceedings than does the district or county in which a deponent actually committed perjury.

29. *Id.*

30. *Id.* at 486.

31. *See United States v. Williams,* 274 F.3d 1079, 1084 (6th Cir.2001); *United States v. Williams,* 788 F.2d 1213, 1215 (6th Cir.1986); *United States v. Eisenberg,* 773 F.Supp. 662, 695 (D.N.J.1991); *United States v. Savoy,* 38 F.Supp.2d 406, 414 (D.Md.1998); *United States v. Manfredi,* 789 F.Supp. 961, 963–64 (N.D.Ind.1992); *United States v. Solan,* 792 F.Supp. 99, 100 (M.D.Fla.1992); *People v. Fisher,* 220 Mich.App. 133, 147, 559 N.W.2d 318, 325 (1996); *see also United States v. Frederick,* 835 F.2d 1211 (7th Cir.1987); *United States v. Reed,* 773 F.2d 477, 483–84 (2nd Cir.1985); *United States v. Kibler,* 667 F.2d 452, 454 (4th Cir.1982); *United States v. Barham,* 666 F.2d 521 (11th Cir.1982); *United States v. Tedesco,* 635 F.2d 902 (1st Cir.1980); *United States v. O'Donnell,* 510 F.2d 1190, 1193 (6th Cir.1975)(all holding that venue in federal prosecutions for attempting to intimidate or influence a witness lies not only in the district where the attempt to influence was made; but also where the witness would testify (*i.e.,* the district in which the legal proceeding was pending)).

that the jurisdiction most affected by the perjury (or witness tampering) may prosecute it.

### III.

The only disputed issue in this appeal is whether appellant "used" or "attempted to use" the false statements in his Fort Bend County lawsuit. Appellant argues that *he* did not "use" the lies in his deposition anywhere and that he certainly had no intent to use them *in Fort Bend County*. Therefore, he argues, he can be prosecuted for perjury only in Harris County, where he made the false deposition statements, but not in Fort Bend County, where the lawsuit for which his deposition was taken was itself pending. Appellant is wrong. Applying the plain language of Article 13.03 to this case, we conclude that Fort Bend County is a proper venue for prosecution of perjury committed in a deposition taken in a lawsuit pending there.

Like the juror's false affidavit in *Carter v. State*, appellant's deposition was "used" in his underlying lawsuit, even though he never offered it into evidence himself.[32] Venue was not the issue in *Carter*—everything in that case happened in Houston— but the rationale underlying *Carter* applies equally in this case. In both situations, the person gave the false testimony intending to affect, to some degree, the parent legal proceeding. Juror Carter made a material lie in his affidavit, which was then used by the defendant, Vincent Vallone, in an attempt to obtain a new trial. It did not matter that Vallone, rather than Carter, presented the affidavit to the court. In the present case, appellant made a non-material lie, ostensibly to combat his opponent's possible "trickery" in the conversion lawsuit. It does not matter that appellant's opponent introduced the false deposition testimony at trial to impeach him. In *Carter v. State*, juror Carter's false statement could have influenced a decision on the defendant's motion for a new trial. Here, appellant's statement (regardless of its materiality) could have influenced the discovery stage in a Fort Bend County civil lawsuit. Appellant's testimony was inextricably linked to Fort Bend County, while Harris County had no interest in the underlying lawsuit. Appellant's deposition testimony was "used or attempted to be used" in Fort Bend County because he gave it for purposes of his own Fort Bend County lawsuit.

Depositions are widely used in civil lawsuits. They are used to reveal the strengths and weaknesses of a case.[33]

---

**32.** 140 Tex.Crim. at 332, 144 S.W.2d at 586.

**33.** *See e.g.*, A. Darby Dickerson, *Deposition Dilemmas: Vexatious Scheduling and Errata Sheets*, 12 Geo. J. Legal Ethics 1, 3–4 (1998):

[T]he stakes at a deposition can be high—or at least perceived to be high by the litigants and their counsel. When evaluating the strength of their client's case, litigators often accord great weight to witnesses' and attorneys' performances during depositions. Thus, if an attorney's client performs well while the opponent performs poorly, the attorney may attach a higher settlement value to the case. Moreover, deposition transcripts are often an important trial resource, sometimes substituting for live witnesses, and at other times serving as fodder for cross-examination and impeachment. Depositions are a dress rehearsal—and due to high settlement rates are often a substitute—for trial. Therefore, attorneys tend to attach more importance to depositions than to most "paper discovery."

(footnotes omitted). *See also id.*, n. 12 (referencing *Hall v. Clifton Precision*, 150 F.R.D. 525, 531 (E.D.Pa.1993) (stating that "depositions are the factual battleground where the vast majority of litigation actually takes place.... The pretrial tail now wags the trial dog. Thus, it is particularly important that this discovery device not be abused. Counsel should not forget that even thought the deposition may be taking place far from a real

They are used as evidence in motions for summary judgment.[34] They serve as evidence at trial without the necessity of showing that a witness is unable to testify.[35] They can, under certain circumstances, be used in other lawsuits.[36]

When this case was tried, Texas Rule of Civil Procedure 207(1)(a) provided:

At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition taken in the same proceeding, insofar as admissible under the Texas Rules of Civil Evidence, *may be used by any person for any purpose* against any party who was

present or represented at the taking of the deposition or who had reasonable notice thereof.[37]

Under current Rule 199.2(b)(2), depositions may be taken in any of a number of different counties.[38] Another rule provides for telephone depositions and those taken by "other remote electronic means."[39] All depositions, no matter where they are taken, must be conducted in the same manner as if the testimony were being elicited at trial.[40] The deposition location rules operate for the convenience of the parties and the witnesses,[41] but the purpose of taking a

---

courtroom, with no black-robed overseer peering down upon them, as long as the deposition is conducted under the caption of this court and proceeding under the authority of the rules of this court, counsel are operating as officers of this court.")).

**34.** *See McConathy v. McConathy*, 869 S.W.2d 341, 341 (Tex.1994)(noting that no authentication is required to use unfiled depositions as summary judgment evidence because "[a]ll parties have ready access to depositions taken in a cause, and thus deposition excerpts submitted with a motion for summary judgment may be easily verified as to their accuracy. Authentication is not necessary and is not required under the present rules").

**35.** *See* Tex.R. Evid. 801(e)(3); *see also Spring Branch v. Mengden*, 628 S.W.2d 130, 138 (Tex.App.Houston [14th Dist.] 1981, ref. n.r.e.)("It is well settled that the deposition of a witness present at trial may be read.").

**36.** *Smith v. Smith*, 720 S.W.2d 586, 599 (Tex.App.Houston [1st Dist.] 1986, no writ)("If use of a deposition from a different lawsuit is permitted, then T.R.Evid. 801(e)(3) dictates that such deposition testimony is not hearsay."). *See* Tex.R. Civil Proc. 203.6(c)("Depositions taken in different proceedings may be used as permitted by the Rules of Evidence.").

**37.** Tex.R. Civ. Proc. 207 (former). In 1998, the Texas Supreme Court amended and renumbered the rules of civil procedure. Current Rule 203.6(b) provides, in pertinent part, that "[a]ll or part of a deposition may be used

for any purpose in the same proceeding in which it was taken."

**38.** Tex.R. Civ. Proc. 199.2(b)(2). These deposition locations include "(A) the county of the witness's residence; (B) the county where the witness is employed or regularly transacts business in person; (C) the county of suit, if the witness is a party or a person designated by a party under Rule 199.2(b)(1); (D) the county where the witness was served with the subpoena, or within 150 miles of the place of service, if the witness is not a resident of Texas or is a transient person; or (E) subject to the foregoing, at any other convenient place directed by the court in which the cause is pending." *Id.*

**39.** Tex.R. Civ. Proc. 199.1(b) provides that:

A party may take an oral deposition by telephone or other remote electronic means if the party gives reasonable prior written notice of intent to do so. For the purposes of these rules, an oral deposition taken by telephone or other remote electronic means is considered as having been taken in the district and at the place where the witness is located when answering the questions. The officer taking the deposition may be located with the party noticing the deposition instead of with the witness if the witness is placed under oath by a person who is present with the witness and authorized to administer oaths in that jurisdiction.

**40.** Tex.R. Civ. Proc. 199.5(d).

**41.** Tex.R. Civ. Proc. 199.2(b)(2)(E) (subject to specific locations listed, deposition may be

party's deposition, whether in the county in which the lawsuit is pending or in some other location, is to use that deposition in the county in which the lawsuit is pending. Reminiscent of Walter Cronkite's television program, "You Are There," the party-deponent is legally, though not literally, testifying in the court in which the lawsuit is pending.

Thus, a party-witness who fails to appear, be sworn, or answer questions at a civil deposition may be punished for contempt of court.[42] The courts in *both* the county in which the deposition is taken and the county in which the lawsuit is pending may hold the party-witness in contempt.[43] So, too, must each court have the power to prosecute perjury within the parties' depositions. It would, in this case, flout the integrity of the Fort Bend County court, in which appellant's civil lawsuit was pending, if it were fair game for appellant to commit perjury in his deposition—taken in his own lawsuit—as long as it was taken outside Fort Bend County itself.[44]

In this case, the court of appeals, treating the issue as one of first impression, relied upon *Carloss v. State*,[45] a 1917 forgery case in which the defendant's conviction was reversed for lack of venue.[46] In *Carloss*, the State prosecuted the defendant in Taylor County for a check he had allegedly forged in Tarrant County and mailed to his father-in-law in Taylor County.[47] But the father-in-law, suspecting the check was forged, never cashed it; instead, he gave it to his banker and suggested that it be sent to the Tarrant County bank upon which it was drawn.[48] This Court held that venue was not proper in Taylor County because the check was not forged there, and no one attempted to use or pass it in that county for a fraudulent purpose.[49] Finding *Carloss* analogous, the court of appeals, in this case, held that "in order for appellant to attempt to use his false statement in Fort Bend, something more was required of him than merely perjuring himself in Harris County." And that court found that, since "the State failed to come

---

taken "at any other convenient place directed by the court in which the cause is pending"); *see Wal–Mart Stores, Inc. v. Street*, 754 S.W.2d 153, 155 (Tex.1988) (when no showing in record "that it was reasonable or otherwise convenient" for chairman of Wal–Mart to travel to Fort Worth for his deposition, opposing party was required to take it in witness' home county in Arkansas).

**42.** *See* Tex R. Civ. Proc. 215.1(a), which states, in pertinent part:
 On matters relating to a deposition, an application for an order to a party may be made to the court in which the action is pending, or to any district court in the district where the deposition is being taken.

**43.** If a party fails to comply with the trial court's order regarding a party's deposition, the court in which the lawsuit is pending may hold the recalcitrant party in contempt of court. Tex.R. Civ. Proc. 215.2(b)(6).

**44.** Of course, a perjury charge could be filed in the county where the lie was uttered as

well, but it might not be because that county usually has no particular interest in the accurate outcome of the underlying lawsuit pending in another county.

**45.** 82 Tex.Crim. 19, 198 S.W. 147 (1917).

**46.** *Soliz*, 60 S.W.3d at 166.

**47.** *Id.* (discussing *Carloss*, 82 Tex.Crim. at 20, 198 S.W. at 147).

**48.** *Id.*

**49.** *Id.* In *Carloss*, this Court used the terms "venue" and "jurisdiction" interchangeably, although they do not express precisely the same concept. *See Boyle v. State*, 820 S.W.2d 122, 139–40 (Tex.Crim.App.1989) (noting that jurisdiction refers to the power of the court to act, venue refers to the place in which a court may exercise jurisdiction); *Thomas v. State*, 699 S.W.2d 845, 854–55 (Tex.Crim.App. 1985).

forward with any evidence of an act appellant committed in Fort Bend to support venue[,]" the State had therefore failed to prove venue.[50]

*Carloss,* however, was decided before the 1921 amendments to the Code of Criminal Procedure, which added language to the forgery venue statute to permit prosecution where the forged instrument is "deposited or placed with another person, firm, association, or corporation either for collection or credit for the account of any person, firm, association or corporation."[51] In *Carloss,* the forged instrument was neither forged nor cashed in Taylor County, but it was received there in the course of its path to its ultimate destination.[52] The *Carloss* decision interpreted a more narrower venue statute. Thus, a county in which the check was "used or passed . . . for fraudulent purposes" had venue,[53] but not a county in which the check was deposited by a third person who was not acting with a fraudulent purpose, but was merely taking intermediate steps toward the goal of final presentation to the issuing bank.

Ever since the 1921 forgery venue amendments, however, venue would be proper in Taylor County as well as Tarrant County.[54] In more modern times, the analysis for purposes of determining venue has included the effect of the offense upon a particular county as well as the location of the criminal act itself. Thus, we follow the reasoning concerning perjury offenses set out in *Carter, Hutcheson,* and *Reed,* all of which post-date the much earlier *Carloss* decision, which was, in any event, discussing venue for forgery, not perjury.

 Our holding, that venue lies in Fort Bend County because appellant's false statement was "used or attempted to be used" when it was made in his party-witness deposition in a pending Fort Bend County lawsuit, dictates the answer to the questions on which we granted review.[55] First, it is not necessary for a party-deponent to offer his own false deposition testimony into evidence in the county in which the lawsuit is pending to establish venue in that county.[56] Second, a party-deponent

50. *Soliz,* 60 S.W.3d at 166.

51. Acts 1921, 1st C.S., ch., § 1. *See* Tex.Code Crim. Proc. art. 13.02, providing that "Forgery may be prosecuted in any county where the writing was forged, or where the same was used or passed, or attempted to be used or passed, or deposited or placed with another person, firm, association, or corporation either for collection or credit for the account of any person, firm, association or corporation. In addition, a forging and uttering, using or passing of forged instruments in writing which concern or affect the title to land in this State may be prosecuted in the county in which such land, or any part thereof, is situated."

52. 82 Tex.Crim. at 21, 198 S.W. at 147.

53. *Id.*

54. Until the 1921 amendments, venue lay where the forged instrument was made or where it was "passed" with a fraudulent intent. *See Stroube v. State,* 40 Tex.Crim. 581,

584, 51 S.W. 357 (Tex.Crim.App.1899); *see also* George Dix & Robert Dawson, 40 Texas Practice § 2.14 (2001)("That [1921] amendment clearly seems intended . . . in the case of a forged check, to authorize venue in any county in which any institution received the instrument in the course of its path to its ultimate destination").

55. *See* note 1.

56. Although this particular case concerns only the "use or attempted use" of a party's deposition, as a general proposition, it is irrelevant whether the deponent is a party or a non-party. Once an individual acknowledges that he is speaking under oath, and concerning a dispute that is being litigated there or elsewhere, the deponent is on notice that he will be subject to sanctions for perjury in the event he commits it. It is also irrelevant where one is actually deposed, so long as one knows or should know that his deposition testimony concerns a dispute that is being litigated elsewhere.

who intentionally makes a false statement in his deposition has "used or attempted to use" that statement in the underlying lawsuit when he testifies in his deposition. Third, venue is indeed proper for misdemeanor perjury in a county where the party's false deposition testimony is used by his opponent to impeach that party at trial. Fourth, appellant's false statement in his party-deposition was "used" in the underlying Fort Bend County lawsuit at the very moment he testified in his Harris County deposition. Therefore, we reverse the judgment of the court of appeals, and remand the case to that court for further proceedings consistent with this opinion.

JOHNSON, J., concurred in the judgment.