Affirmed and Opinion filed March 30, 2006









Affirmed and Opinion filed March 30, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-05-00351-CR

____________

 

SIMEON LEBLEU, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 47,385

 



 

O P I N I O N








A grand jury indicted Simeon Lebleu,
appellant, on four counts of retaliation. 
Three counts were for threats made against Judge K. Randall Hufstetler
due to his service as judge of the 300th District Court of Brazoria County, and
one count was for a threat made against Loretta Marion, appellant=s ex-wife, for her
service as a witness in Brazoria County in a family matter between appellant
and Ms. Marion.  A jury convicted
appellant of one count of retaliation against Judge Hufstetler, and one count
of retaliation against Ms. Marion.  It
found appellant not guilty on the other two counts.  Appellant was sentenced on one count to ten
years= imprisonment with
no fine, and on the other count to ten years= probated imprisonment
with  a $5,000 fine.  Appellant raises three issues: (1) the
evidence was legally insufficient to sustain his conviction; (2) the evidence
was factually insufficient to sustain his conviction; and (3) the trial court
should have quashed the indictment for lack of venue.  We affirm.

Factual and Procedural Background

Simeon Lebleu and Loretta Marion were
married for over ten years.  They had one
child, a daughter.  After years of
marital problems, Ms. Marion decided to divorce appellant.  After their divorce, the two continued to
appear before the district court in Brazoria County regarding various matters
such as adjustments to child support, protective orders, and eventually
termination of appellant=s parental rights.  Judge K. Randall Hufstetler presided over
many of these matters, and Ms. Marion appeared as a witness as well.  During hearings held in 2003, appellant was
living in Louisiana, and Ms. Marion was living in Brazoria County.

On April 24, 2003, Judge Hufstetler held a
hearing on Ms. Marion=s application for a protective order
against appellant, as well as a motion to modify support.  Judge Hufstetler granted the application and
modified support.  On September 30, 2003,
Judge Hufstetler entered a final order terminating appellant=s parental rightsCan issue evidently
raised previously, but not ruled on at the April hearing.  Appellant was upset about the April hearing=s outcome.  








In May 2003, appellant called the Texas
State Commission on Judicial Conduct, located in Travis County.  Ronald Bennett, the Commission=s chief
investigator, returned appellant=s phone call.  During that conversation, Mr. Bennett
explained the process of filing a formal complaint against a Texas state judge
and that he could not alter a judicial ruling; his function was to investigate
judicial misconduct.  Appellant was not
satisfied with this procedure, as he believed it was not a proper check on
judges= conduct on the
bench.  Appellant became more agitated
during the conversation and ultimately, according to Bennett, said words to the
effect that Amaybe he should just put a stick of
dynamite in [Judge Hufstetler=s] mouth and let
the judge see what it=s like to have somebody control your life.@  After Bennett tried to calm him down and
explain that appellant=s threats would not improve the situation,
appellant said something along the lines of, AWell, it=s too late.  It=s already in the
works,@ and AJust watch the
news tonight.@ 
Those threats comprised count one, for which appellant was convicted and
received ten years= imprisonment and no fine.[1]  The State introduced evidence of other
threats as well, but the jury returned a verdict of not guilty on those counts.

The other threat for which appellant was
convicted was made against Ms. Marion, appellant=s ex-wife.  While in the Brazoria County jail, appellant
spent part of his time in an eight-man tank. 
Another inmate, Leroy Ecby, also lived in that tank.  Ecby reported that appellant made statements
about hiring someone to kill Ms. Marion. 
Appellant was angry with Ms. Marion because of her role in the family
court matter.  The jury convicted
appellant of retaliation, and he received a ten-year probated sentence and a
$5,000 fine.  

Appellant presented witnesses who
testified that he was emotionally unstable. 
They also testified about the veracity of the State=s witnesses,
appellant=s commitment to a mental ward at a
Louisiana hospital, and his flare for dramatic Aextreme@ speech, even when
he had no intent to actually follow through with a threat.  Among appellant=s witnesses were
other inmates at the Brazoria County jail who testified about Ecby=s motives to
testify against appellant, and that appellant was never serious when he engaged
in Atank talk.@  








The jury ultimately believed Bennett and
Ecby=s testimony,[2]
and found that appellant did in fact threaten to retaliate against Judge
Hufstetler and Ms. Marion based upon their service as a judge and witness
respectively.  The trial court entered
the sentence and terms of probation. 
Appellant timely filed notice of appeal. 
We affirm.

Analysis

I.        Legal
Sufficiency

In a legal-sufficiency challenge, we employ the familiar
standard of viewing the evidence in the light most favorable to the
verdict.  King v. State, 29 S.W.3d
556, 562 (Tex. Crim. App. 2000).  If any
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt, we will affirm. 
Id.   We will not
re-weigh the evidence and substitute our judgment for that of the jury.  Id. 
Here, because there was direct testimony from witnesses who actually
heard appellant make the threats, the evidence is legally sufficient.

The elements of retaliation are (1)
intentionally or knowingly, (2) threatening, (3) to harm another, (4) by an
unlawful act, (5) in retaliation for or on account of the service or status of
another, (6) as a public servant, witness, prospective witness, or informant .
. . .  See Tex. Pen. Code ' 36.06(a).  The State had to produce sufficient evidence
for each of these elements.  It is
important to note now that the elements do not require that appellant intend to
carry out the threat, take any affirmative steps to carry out the threat, or
even that appellant issue the threat directly to the public servant or
witness.  

A.      Conviction
for Threat Against Judge Hufstetler








To meet its burden, the State adduced
evidence that appellant did not simply make one off-hand comment about putting
dynamite in Judge Hufstetler=s mouth, but
rather did so repeatedly.  Also, witnesses
testified appellant fixated on Judge Hufstetler and thought of various ways in
which he could physically harm the judge.[3]  This evidence showed that appellant
intentionally and knowingly made these threats of harm, which would be unlawful
acts.  However, that is only part of the
State=s burden.  The State also had to prove that the threats
were made in retaliation for Judge Hufstetler=s service as a
public servant.

To prove these elements, the State
produced evidence that appellant made the threats because of Judge Hufstetler=s role as judge in
appellant=s family law case.  Appellant=s threats were an
outgrowth of his extreme dissatisfaction with Judge Hufstetler=s rulings.  Evidently, he believed the judge had acted contrary
to what the law required.  Because he
thought Judge Hufstetler was controlling his life without regard for the law,
appellant threatened to put dynamite down the judge=s throat to show
the judge how it felt to have someone control his life.  Judge Hufstetler would not have presided over
the family law matters but for his role as a public servant in Brazoria
County.  Thus, we conclude that appellant
uttered his threats in retaliation for Judge Hufstetler=s role and service
as a judge.  The State=s evidence was
legally sufficient for each element.

B.      Conviction
for Threat Against Loretta Marion

The elements the State needed to prove for
the threat against Ms. Marion are the same as those for Judge Hufstetler,
except that it was Ms. Marion=s service as a
witness, not public servant, that led to the threat against her.  The State presented evidence to show that
appellant did not make off-hand, one-time statements in anger regarding Ms.
Marion.  As with the threats against
Judge Hufstetler, these were not comments made in a vacuum, much less
immediately after a ruling, and then never uttered again.  Appellant fixated on his former wife, her
actions in the family law matter, and how he could harm her.  Appellant even took the opportunityCas recorded by his
then-wife, TomorroCto insist he was serious about his threats
to kill her.








Testimony indicated that appellant spent
considerable time talking about the family law matter while in county
jail.  Although appellant evidently made
more unrealistic, uncharged threats, such as pouring 100% peroxide on his
former wife, he was indicted for threatening to hire someone to kill her.  Ecby testified that appellant was seriously
inquiring about finding someone to kill Ms. Marion.  Regardless of whether appellant followed
through with the threat or not, the evidence supports the finding that he
intentionally and knowingly issued a threat to harm Ms. Marion in an unlawful
way.  It remained for the State to prove
that the threat was directly related to Ms. Marion=s service as a
witness in Brazoria County.

We conclude the State adduced sufficient
evidence to show that appellant=s motive in
threatening Ms. Marion on this occasion was for her role in the family law
matter.  Specifically, he threatened her
because of her testimony and court filings against him in seeking termination
of his parental rights, modification of child support, and a protective order.  The State=s evidence came
from Ecby and others in the tank who heard appellant discuss his case at
length, and explain how upset his ex-wife=s actions made
him.  Those actions were directly tied to
her role as witness in that matter in seeking certain relief.  

C.      Summary

The evidence was legally sufficient.  Viewed in the light most favorable to the
verdict, the witnesses= testimony proved each element of the
offense.  The State presented evidence
showing more than a mere threat.  There
was additional evidence that appellant had initiated a plan to fulfill his
threats.  We overrule appellant=s first issue as
to both convictions.

II.       Factual
Sufficiency








Appellant also raises the issue of factual sufficiency.  When conducting a factual sufficiency review,
we view the evidence in a neutral light and will set the verdict aside only if
the evidence is so weak as to make the verdict clearly wrong and manifestly
unjust, or if the contrary evidence is so strong that the standard of proof,
beyond a reasonable doubt, could not have been met.  Escamilla v. State, 143 S.W.3d 814, 817
(Tex. Crim. App. 2004).  While we have
reviewed the entire record and have considered all evidence presented at trial,
we cannot re-weigh the evidence and supplant the role of the jury to resolve
conflicts in testimony and evaluate witness credibility.  See Zuniga v. State, 144 S.W.3d 477,
482 (Tex. Crim. App. 2004) (stating that appellate courts are not to Afind@ facts or substitute their judgment
for that of the jury).  As we detail
below, the evidence is factually sufficient as well.  

A.        Threat Against
Judge Hufstetler

1.         Appellant=s argument about intent

The evidence in this case revolves
significantly around witness credibilityCspecifically, what
appellant intended to convey by his words. 
He challenged the State=s evidence,
contending his statements could be considered ambiguous rather than threateningCinstead of saying
he would put dynamite in the judge=s mouth, he said Amaybe@ he Ashould@ do so.  Additionally, appellant attempted to prove
that he was speaking only in the hypothetical regarding Judge Hufstetler.  Other statements about Awatch[ing] the
news,@ and Ait=s too late@ concerned
potentially-suicidal thoughts on his part unrelated to any threat.  Testimony indicated he told his sister he
would not hurt anyone.  Of course, these
statements must be compared with the tape recording of a conversation with
Tomorro during which he insisted he was serious about killing Ms. Marion.  Another theory appellant offered was that he
might have meant it was too late to alter the family court outcome, as there
was a final order in that case.  Again,
the purpose of this testimony was to show that appellant=s words could have
carried any number of meanings. 








Appellant also presented testimony from
witnesses that he routinely threatened other peopleCactually
strengthening the case to show his intent to threaten.  While he never actually carried out a threat,
his witnesses consistently testified he was a Apop off,@ who often made
dramatic statements and threats. 
Appellant=s evidence does not invalidate the
conviction.  At most, it provides
competing theories as to the meaning of words and, thus, intent to
threaten.  The jury=s role was to
evaluate the evidence and determine if appellant had the intent to threaten,
and ample evidence supports its finding that appellant had the intent to
threaten.

2.       Appellant=s defensive
theories

The crime of retaliation does not require
an intent to follow through with a threat. 
It is not an element of the crime. 
So long as a person issues a threat, knowingly and intentionally, and
for the reasons set out in the statute, then she is guilty of the crime.  Appellant=s witnesses did
not contradict any element; certainly, their testimony was not so strong that
the standard of proof could not be met. 
When reduced to its essence, appellant=s case was
two-fold: (1) he was emotionally unstable and upset and therefore should not be
convicted for his rash statements, and (2) he constantly makes threats, but
because he never intends to carry them out, his conviction is not sound.  Both of these arguments are flawed.

First, appellant did not raise an insanity
defense.  What he arguedCemotional
instabilityCis not a valid defense and does not
exculpate him.  Perhaps emotional
instability would negate intent to carry out a threat, or explain why he issued
a threat, yet it does not vitiate his intent to threaten.  Indeed, it appears appellant was so agitated
and upset that he clearly meant to express himself through a threat.  








Second, looking at appellant=s other theory
further supports our reasoning.  Again,
the statute does not address the intent to carry out the threat.  Appellant=s own witnesses
testified that appellant has a certain panache for threatening others.  Regardless of whether he intended to proceed
with the threatened action, appellant=s witnesses added
credibility to the State=s case that he knowingly and intentionally
issued these statements not as hypothetical scenarios, but as threats to make a
point.  Further, though not necessary for
our disposition, we note that there was evidence adduced at trialCthrough tapes of
appellant=s conversations with his then-wife,
Tomorro, eye-witness testimony, and physical evidenceCthat appellant had
taken affirmative steps to carry out some of his threats, and continued to
insist he was serious about carrying them out. 
Of course, appellant was able to attack the credibility of the State=s witnesses and
evidence, but it is the jury=s prerogative to
believe whom it wishes.

We have outlined relevant State evidence
regarding the other elements of the offense in the previous section.  It is not so weak to render the verdict
clearly wrong or manifestly unjust. 
Neither was appellant=s evidence so
strong so that the standard of proof could not be met.  Examining all of the evidence we have
outlined, it is factually sufficient.

B.      Threat
Against Loretta Marion

As with the threat against Judge
Hufstetler, appellant provided testimony from numerous witnesses indicating he
is simply a Apop off,@ was emotionally
upsetCthough not legally
insaneCand would never
act on one of his threats.  We have
already addressed the problems with these arguments above.  However, we note that appellant continuously
insisted to Tomorro and to inmates that he wanted to kill Ms. Marion.  Further, when Tomorro asked him about a
receipt for gasoline purchased in Texas, appellant told her that while she may
have thought he was not serious about his threat to kill Ms. Marion, she was
wrong.  He then told Tomorro to bring a
gun if she could get him out of jail.  








At trial, appellant offered reasons for
why he would have been in Texas buying gasoline, although he lived in
Louisiana.  Appellant worked in Texas and
had a trailer thereCmore specifically, in the county where he
purchased gasoline on that particular occasion. 
As before, he also introduced testimony that his statements to Ecby in
the tank about hurting his wife were nothing more than tank talk and had been
exaggerated.  Further, he argued his
statements on recordings to Tomorro were nothing more than puffing.  Yet, we note again that intent to carry out a
threat is not an element of the offense. 
While the evidence offered to show appellant had actually begun to carry
out a threat strengthens the case for intent, it is not necessary.  The fact that appellant continued to insist
he was serious is sufficient to show his intent to threaten.  His comments surrounding the threats are
enough to show it was on account of her service as a witness in the family law
matter.  The other elements of the crime
are not in serious dispute.  The jury
heard sufficient evidence to support the conclusion that the State met its
burden on each element of the crime.  

C.      Summary

The evidence was factually sufficient to
sustain appellant=s convictions on both counts.  The State provided evidence of each
element.  Appellant=s witnesses did
not, as we have discussed, negate those elements.  Although their testimony might have been
calculated to negate an element of intent to threaten, it helped to prove that
appellant actually intends to issue such threats when he is upset.  The threats were to harm Judge Hufstetler and
Ms. Marion in an unlawful way, and in retaliation for their service in Brazoria
County in the family law matter.  We
overrule appellant=s second issue.

III.      Venue
was Proper in Brazoria County

In his final issue, appellant contends
venue was improper in Brazoria County. 
Specifically, he argues that the offense did not occur in Brazoria
County because he did not initially threaten anyone while he or those listening
to the threats were in Brazoria County. 
We disagree.  If one element of
the crime occurred in Brazoria County, venue was proper.








AOffenses committed
wholly or in part outside this State, under circumstances that give this State
jurisdiction to prosecute the offender, may be prosecuted in any county in
which the offender is found or in any county in which an element of the offense
occurs.@  Tex.
Code Crim. Proc. Art. 13.01.  The
standard for proving venue is preponderance of the evidence.  See Tex.
Code Crim. Proc. Art. 13.17. 
Additionally, our venue statutes are simply a species of codified Asubstantial
contacts@
jurisdiction.  Soliz v. State, 97
S.W.3d 137, 141 (Tex. Crim. App. 2003). 
Thus, venue will lie so long as the defendant, his conduct, his victim,
or the fruit of his crime has some relationship to the prosecuting county.  Id. 
The Legislature, through the statutes, has specified the types of
contacts that satisfy the substantial contacts threshold.  Id. 
Here, so long as one element occurred in Brazoria County, then there are
substantial contacts.  See id.; Tex. Code Crim. Proc. Art. 13.01. 

As we noted earlier, the elements of
retaliation are (1) intentionally or knowingly, (2) threatening, (3) to harm
another, (4) by an unlawful act, (5) in retaliation for or on account of the
service or status of another, (6) as a public servant, witness, prospective
witness, or informant . . . .  See
Tex. Pen. Code ' 36.06(a).  Elements five and six occurred in Brazoria
County for each indicted offense. 
Appellant=s threats were based on the status and
service of Judge Hufstetler and Ms. Marion, which they attained or fulfilled in
Brazoria County.   

Appellant has argued since the inception
of the State=s prosecution that the position we now
adopt is too broad.  His rule would
require that he either be in Brazoria County when he made the threatCwhich is the case
for the threats made to Ecby in the Brazoria County jailCor that the person
who heard the threat be in Brazoria County. 
We disagree.  The substantial
contacts with Brazoria County are immediately apparent.  It is the county with the greatest interest
in prosecuting this case.  Texas Penal
Code section 36.06 is clearly meant to aid in the administration of justice by
eliminating the hindrance of threats or intimidation.  The family law matter, the judge, and the
witness are all connected to Brazoria County. 
There is no criminal charge without the necessary facts occurring in
Brazoria County.  Further, our holding is
not too far reaching.  Under our holding,
only two Texas counties could prosecute this case: Travis, where one threat was
receivedCappellant=s desired
interpretationCand Brazoria, where Judge Hufstetler and
Ms. Marion attained their status as public servant and witness, and performed
duties leading to the threats.  

Appellant has never contested that Judge
Hufstetler is a judge in Brazoria County, or that Ms. Marion was a witness in
Brazoria County.  Because the State
proved by a preponderance of the evidence that one element of the offense
occurred in Brazoria County, we overrule appellant=s third issue.  

 








Conclusion

Having overruled
each of appellant=s issues, we affirm the judgment of the
trial court.

 

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment
rendered and Opinion filed March 30, 2006.

Panel
consists of Justices Hudson, Fowler, and Seymore.

PublishCTex. R. App. P. 47.2(b)











[1]  Judge Robert
May presided over appellant=s criminal case. 
Judge Hufstetler was only a witness in the criminal case.





[2]  The State and
appellant both presented much more evidence than outlined here.  We give an abbreviated version of the facts
because the jury convicted of only two counts of retaliation and thus only some
of the testimony is relevant to our sufficiency discussion.  We will add other facts as necessary in our
analysis.  





[3]  Appellant also
made more unrealistic, uncharged threats against Judge Hufstetler, such as
dipping a blow dart in cyanide and using it to kill the judge, having someone
push appellant in front of the judge=s car to
make it appear the judge harbored bias and anger toward appellant, and to erect
a billboard accusing the judge of various judicial misconduct.  These, while not proof of the threat in the
indictment, also go to prove intent.