NO. 07-09-00326-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 



OCTOBER
6, 2010

 



 

HENRY WALTER WOOTEN, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 251ST DISTRICT COURT OF RANDALL
COUNTY;

 

NO. 20,329-C; HONORABLE ANA ESTEVEZ, JUDGE



 



 

Before CAMPBELL
and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

A Randall County jury found Henry
Walter Wooten guilty of hindering a secured creditor[1]
and assessed a five-year sentence.  He
appeals the trial court’s judgment of conviction.  We will affirm.

 

Factual and Procedural History

            On
January 31, 2006, appellant and Amarillo Community Federal Credit Union (ACFCU)
entered into an installment sales contract for the purchase of a 2000 Jaguar
automobile.  The ACFCU office at which
the sales contract was signed is located in the Potter County portion of
Amarillo.[2]  The sales contract and certificate of title
both list appellant’s address on South Jackson Street, a location both parties
agree is in the Randall County portion of Amarillo.

            In
April 2008, appellant began to fall behind on his payments.  About the same time, appellant left his
Randall County residence to live with a cousin in Grand Prairie, Dallas County,
Texas.  When appellant made this move, he
took the Jaguar from Amarillo to Grand Prairie. 
Appellant and ACFCU remained in contact regarding the status of the payments
and the location of the car.  On December
3, 2008, appellant reported that the Jaguar had been stolen sometime in early
November from Grand Prairie.[3]  According to ACFCU, appellant’s report
followed shortly after one of its conversations with appellant in which he
expressed his intent that ACFCU never regain possession of the Jaguar.  The State alleged that appellant somehow
disposed of the Jaguar in Dallas County. 
ACFCU never recovered possession of the car.

            Apparently,
appellant returned to Amarillo toward the end of 2008.  He was subsequently charged with and
convicted of hindering a secured creditor. 
He timely appealed his conviction, bringing one issue for this Court’s
consideration.  He challenges only the
factual sufficiency of the evidence to support a finding that venue was proper
in Randall County.

Standard and Scope of Review

            Unless
venue was disputed in the trial court or unless the record affirmatively shows
the contrary, we must presume that venue was proved in the trial court.  Tex.
R. App. P. 44.2(c)(1).  Appellant concedes that the matter of venue
was not raised in the trial court.  Our
review of the record confirms that it was not. 
That said, operating within the framework of Rule 44.2(c)(1), we must
review the record to see if it affirmatively shows that the State failed to
prove venue in Randall County.

Analysis

Venue in hindering secured creditor
prosecution

            For
the offense of hindering secured creditors, venue is proper as follows:

If secured property is taken from one county and unlawfully disposed of
in another county or state, the offender may be prosecuted either in the county
in which such property was disposed of, or in the county from which it was
removed, or in the county in which the security agreement is filed.

Tex. Code Crim. Proc. Ann. art. 13.09 (Vernon
2005).  So, we have three
potential venues here: (1) the county of “disposal”; (2) the county of
“removal”; and (3) the county in which the security agreement was filed.  No evidence was presented at trial regarding
the filing of any security agreement.[4]  The parties do not dispute that Dallas County
would have been a proper venue as the county of “disposal.”  Venue in Randall County, then, must be
examined in terms of the county from which the property was “removed.”

            Since
the record establishes that appellant possessed the Jaguar for well over two
years at his residence in Randall County and then moved himself and the vehicle
to Dallas County, to conclude that the record affirmatively establishes the
State’s failure to prove venue, we would have to accept appellant’s
interpretation of “the county from which [the property] was removed” and agree
with appellant that Randall County was not a proper venue under article
13.09.  We do neither.

Appellant’s proposed interpretation
of article 13.09

            Appellant’s
argument in this regard centers on his proposed interpretation of
“removed.”  According to appellant,
because article 13.09 does not specifically limit “remove” to say “initially
removed” or “any county from which the property was removed,” it could only mean
the county from which it was “last removed.” 
That is, article 13.09 could only mean removal from the last county in
which the property was located immediately before entering the county in which
appellant disposed of it.  Because the
record suggests that appellant disposed of the property in Dallas County, he
contends, venue would be proper, under the county of “removal” option, only in
counties contiguous to Dallas County. 
The State maintains that the record establishes that Randall County was
a proper venue as the county from which the property was “removed,” in the more
common sense of the word.  Based on the
following considerations, we respectfully decline to adopt appellant’s
interpretation of “removed” as the term is used in article 13.09. 

Rules of construction

             We are guided by general rules of statutory
construction.  “Words and phrases shall
be read in context and construed according to the rules of grammar and common
usage.”  Tex. Gov’t Code Ann. § 311.011(a) (Vernon
2005).  The Texas
Code of Criminal Procedure provides similar guidance: “All words, phrases and
terms used in this Code are to be taken and understood in their usual
acceptation in common language, except where specially defined.”  Tex. Code Crim. Proc. Ann. art.
3.01 (Vernon 2005). 
Generally speaking, to “remove” is “to change the location, position,
station, or residence of.”  Merriam-Webster’s Collegiate
Dictionary 1053 (11th ed. 2003). 
“Station” is defined as “the place or position in which something or
someone stands or is assigned to stand or remain.”  Id. at 1219.  “Residence” is defined as “the act or fact of
dwelling in a place for some time,” “the act or fact of living or regularly
staying at or in some place for the discharge of a duty or the enjoyment of a
benefit,” or “the place where one actually lives as distinguished from one’s
domicile or a place of temporary sojourn.” 
Id. at 1060.  By using terms such as “station” and
“residence,” Webster’s definition of “remove” implies a change from a position
that is more fixed or readily ascertainable.[5]

            Since
the Texas Code of Criminal Procedure does not specifically define “remove,”[6]
we understand the term in its common usage. 
Especially when considering the intrinsically mobile nature of an
automobile, we reject appellant’s proposed reading of the term and, instead,
construe the term as referring to moving the vehicle from the county in which
it was usually positioned, the county in which it was stationed.  Here, that county would be Randall County.  

Theme of venue provisions

            This
interpretation is also more consistent with the general approach of our venue
provisions.  Several cases have
recognized the theme in the Texas Code of Criminal Procedure’s venue provisions
as one that tends toward fixing venue in a county that is sufficiently
connected to the offense alleged.  See
Murphy v. State, 112 S.W.3d 592, 604 (Tex.Crim.App.
2003); Soliz v. State, 97 S.W.3d 137,
141 (Tex.Crim.App. 2003); Dewalt
v. State, 307 S.W.3d 437, 460–61 (Tex.App.—Austin
2010, pet. ref’d); Thompson v. State, 244
S.W.3d 357, 366 (Tex.App.—Tyler 2006, pet. dism’d); Lebleu v.
State, 192 S.W.3d 205, 212 (Tex.App.—Houston
[14th Dist.] 2006, pet. ref’d).  Under our venue provisions, for venue to lie,
the defendant, his conduct, his victim, or the fruits of his crime must have
some relationship to the prosecuting county. 
Soliz, 97 S.W.3d at
141.  The Austin Court recently
explained the goals of our venue scheme:

Venue statutes function to ensure that jurors have a natural interest
in the case because it touched their community; to ensure that prosecutions are
initiated in counties that have some factual connection to the case, thus
minimizing inconvenience to parties and witnesses; to aid predictability in
judicial caseloads, and to prevent forum-shopping by the State. 

Dewalt, 307 S.W.3d at
460–61.  The Texas Court of
Criminal Appeals has characterized the venue provisions as a species of
codified “substantial contacts” jurisdiction and explained that, through the
venue statues, “[t]he Legislature has specified the types of contacts that
satisfy this ‘substantial contacts’ threshold for various offenses.”  Murphy, 112 S.W.3d
at 604; Soliz, 97 S.W.3d at 141.

            Assuming
then that article 13.09 is an expression of the Legislature’s view of counties
bearing “substantial contacts” to the offense of hindering a secured creditor,
appellant’s position that article 13.09 should be read to fix venue in a county
contiguous to Dallas County, the county of disposal, becomes even more
tenuous.  Indeed, to fix venue in a county
through which appellant simply drove the secured property to get to Dallas
County would undermine the notion that the venue statues mean to fix venue in a
county sufficiently connected to the offense.

            When
we consider that a goal of our venue scheme is to fix venue in a predictable
county that is factually connected to the offense being prosecuted, we must
reject appellant’s unwieldy “contiguous-county” interpretation of article 13.09
and recognize that Randall County, the county that a common reading of “remove”
would yield as “the county from which [the vehicle] was removed,” is
significantly connected to the facts of this case.  Our conclusion is not only consistent with
rules of statutory construction, but is also in step with the theme of Texas
venue provisions in which the county of prosecution bears a factual connection
to the offense.  The factual connection
and predictability of Randall County as a venue are more consistent with Texas
courts’ construction and characterization of our venue provisions.  Having concluded that Randall County was a
proper venue under article 13.09, we now look to the record to determine
whether it affirmatively shows that the State failed to prove venue in Randall
County.

What the record shows

            The
record shows that defendant lived, and possessed the vehicle, in Randall County
for over two years.  In fact, the sales
contract signed by appellant requires him to promptly notify ACFCU in writing
if he changes his address or the address at which he kept the car,[7]
demonstrating that the parties expected that the car would be located in
Randall County and that moving it elsewhere—removing
it from Randall County—was a significant event. 
So, the record shows that the Jaguar was kept at appellant’s Randall
County address and that, per the terms of the parties’ agreement, ACFCU
expected the vehicle to be at that Randall County address.  The record, then, does not affirmatively show
that the State failed to prove venue in Randall County.

            Because
venue was not raised at trial and because the record does not affirmatively
show the State failed to prove venue, we apply the presumption of Rule 44.2(c)(1) to conclude that the State met its burden of proving
venue in Randall County.

Conclusion

            Having
overruled appellant’s sole issue on appeal, we affirm the trial court’s
judgment.

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

 

Publish.











[1]
The State alleged that the value of the secured
property at issue was more than $1,500.00 but less than $20,000.00, making the
base offense a state-jail felony.  Tex. Penal Code Ann. § 32.33(b), (d)(4) (Vernon 2003). 
The range of punishment was enhanced by two prior felony convictions to
a second-degree felony range.  See
id. §§ 12.35(c)(2), 12.42(a)(2)–(3) (Vernon
Supp. 2010).    

 





[2] Texas courts take judicial notice that Amarillo lies
in both Randall and Potter Counties.  Williams
v. State, No. 07-03-00237-CR,  2005 Tex.App.
LEXIS 969, at *11 (Tex.App.—Amarillo
Feb. 4, 2005, pet. ref’d); Bruce Campbell &
Son Constr. Co. v. Britton Drive, Inc., 527 S.W.2d 852, 854 (Tex.Civ.App.—Waco
1975, no writ).





[3]
Appellant and his wife attempted to explain that
the delay in reporting the theft of the Jaguar was due to their understanding
that the car had been repossessed. 
Appellant explained, in his statement made to the Potter County
Sheriff’s Department, that ACFCU employees told him to park the car in the
street with the keys in the floorboard. 
ACFCU denies having given these instructions.





[4]
Though neither party advances any position with
respect to venue under this provision, we note that the Texas Certificate of
Title Act provides that, generally, a party may perfect a security interest in
a motor vehicle that is the subject of a first or subsequent sale only by
recording the security interest on the certificate of title.  Tex. Transp. Code Ann. § 501.111(a)
(Vernon 2007). 
Recordation of a lien under the Act occurs when the county
assessor-collector (a) is presented with an application for a certificate of
title that discloses the lien with tender of the filing fee or (b) accepts the
application.  Id.
§ 501.113(a) (Vernon Supp. 2010). 
The time of recording a lien under the Act is considered to be the time
of filing the security interest.  Id. § 501.113(b). 
The Act also requires that the owner of a motor vehicle apply for a
certificate of title to the county assessor-collector of the county in which
(a) the owner is domiciled; or (b) the motor vehicle is purchased or
encumbered.  Id.
§ 501.023(a) (Vernon Supp. 2010).

 





[5] When this Court was called on to address the meaning
of “remove” in the criminal context of prohibited acts by lay midwives, we
explained that the Legislature employed the term “remove” in its “commonly
accepted sense,” meaning (1) to move from a position occupied, (2) to convey
from one place to another, or (3) to take from one’s person.  Pavek v. State, 737 S.W.2d 136, 137 (Tex.App.—Amarillo
1987, no pet.) (citing Webster’s New Riverside University Dictionary 995 (1984)).





[6]
The Texas Penal Code does define “remove” as it
relates to the offense of hindering a secured creditor: to “transport, without
the effective consent of the secured party, from the state in which the
property was located when the security interest or lien attached.”  Tex.
Penal Code Ann. § 32.33(a)(1).  Though the Penal Code’s definition refers to
the “state” in which the property was located, we can draw from the Penal
Code’s definition of “remove” as it relates to an element of the offense what
common sense would suggest: there must be more of a connection between this
offense and the county of venue than merely passing through it.  We will discuss more thoroughly the
connection between venue and the offense later in the opinion.

 





[7]
The sales contract goes on to discuss “removal”
of the vehicle from the United States for a period of seventy-two hours or less
and insurance coverage considerations relating to such “removal.”